THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY G. SMITH, Defendant-Appellant.

Second District   No. 2—95—1483

Opinion filed May 22, 1997.

G. Joseph Weller, Kathleen J. Hamill, and Amy Kraus, all of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, Timothy G. Smith, appeals the order of the circuit court of Lake County denying his motion to reconsider his sentence. On appeal, defendant argues (1) that the trial court abused its discretion when it sentenced defendant, and (2) that the mittimus should be corrected to conform to the trial court's oral pronouncement of defendant's conviction. We affirm.

On May 20, 1992, defendant was charged with four counts of aggravated criminal sexual assault (720 ILCS 5/12—14 (West 1992)) and one count of aggravated criminal sexual abuse (720 ILCS 5/12—16 (West 1992)). On August 17, 1992, defendant admitted to violating his probation and entered negotiated pleas of guilty to one of the three counts of aggravated criminal sexual assault and one count of aggravated criminal sexual abuse. In return for the plea, the State agreed to (1) dismiss the remaining three counts of aggravated criminal sexual assault, and (2) recommend a sentence cap of 25 years' imprisonment.

Prior to the sentencing hearing, the trial court ordered an updated presentence investigation report. The presentence report indicated that defendant was originally sentenced to three years' probation in July 1988 for aggravated criminal sexual abuse. In August 1990 defendant was resentenced to two years' probation for violating his probation sentence by failing to cooperate with treatment for sexual offenders. In January 1991 defendant was held in contempt of court for violating the terms of his probation and ordered

to complete the remainder of his sentence in the Lake County jail. The report also contained information about defendant's employment record, family background, and his participation in counseling programs. Defendant was ordered to attend counseling at the Community Youth Network as a condition of his previous sentence of probation for aggravated criminal sexual abuse. He was refused treatment in April 1992 because of his failure to pay for the services; in May 1992 defendant committed the offenses at issue in the present case. The report also indicates that defendant admits to his criminal behavior, but he "neither understands or [sic] is able to control his behavior." Defendant paid his court obligations in full, reported regularly to the probation department, and completed his public service.

Defendant gave a voluntary statement to the Waukegan police department in May 1992 in which he described in detail his version of the events of the sexual assault on the victim. Defendant stated that he had "no intentions of hurting the little girl," but that he "just wanted to do it and let her go."

A mental health evaluation of defendant conducted by Alfred Marx, Ph.D., was filed on September 25, 1992. A June 1990 report, partially described in the evaluation, characterized defendant's intellectual functioning at the top of the "mentally deficient" range and the "mild mental retardation" category. Dr. Marx' report states in part:

> "[Defendant] has little ability to see things in any perspective, to connect past experiences with the present, or to modify his present understanding or behavior in accordance with anticipated future events or consequences."

Further, Dr. Marx observed recurring themes based on defendant's comments: (1) acknowledgment that his behavior was wrong, inappropriate, and illegal; (2) a lack of understanding about how he could have allowed himself to engage in such behavior; (3) projecting blame to others; (4) complaints that he is misunderstood and unfairly treated; (5) anger; and (6) recognition that he needs treatment. Dr. Marx concluded that defendant is emotionally immature, "functioning at a child-like level," as well as manifesting a significant problem with impulse control. Dr. Marx went on to state:

> "So far as efforts at helpful interventions are concerned, [defendant] has a reported history of failure to consistently follow through with the conditions of probation, with the requirements of treatment programs, etc. Thus it was reported that he failed to report consistently to probation, that he 'walked out of' work release, and that he was 'unsuccessfully discharged from the Com-

munity Youth Network's sexual offenders' program' because of 'an irresponsible and avoidant stance with regard to his treatment.' *** [Defendant's] failure to consistently follow through with the requirements of probation or of any outpatient treatment program *** appears *** to be a function of a combination of his intellectual limitations and a severe personality disorder which *** renders him emotionally and behaviorally unstable and interpersonally dysfunctional[.] *** [Defendant] does not seem to readily learn from experience so that prior offenses, jail, probation, and the threat of consequences don't 'stick.' "

Dr. Marx diagnosed defendant with pedophilia, mild mental retardation, and personality disorder. He opined that defendant is a high risk for reoffending and too high of a risk for outpatient treatment.

The trial court sentenced defendant to a term of 20 years' imprisonment. Following two earlier remands of this case, defendant now appeals the length of his sentence as well as the correctness of the mittimus.

■ As a preliminary matter, we must dispense with defendant's motion to strike a portion of the State's argument in its surreply brief. Defendant contends that, because the State did not request argument on defendant's second issue, the State exceeded its scope by providing argument on the second issue. Defendant has moved to strike this portion of the State's surreply brief. Supreme Court Rule 341 (155 Ill. 2d R. 341) governs the form and contents of appellate briefs. See also *In re M.M.*, 156 Ill. 2d 53, 56 (1993). Adherence to supreme court rules governing briefs is not an inconsequential matter. *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 14-15 (1995). We have reviewed our order granting the State's motion to file a surreply brief and the State's surreply brief. We note that this court's order did not limit the contents or scope of the State's surreply brief. We, therefore, deny defendant's motion to strike.

Before addressing the merits of defendant's appeal, the State contends that defendant is not entitled to challenge his sentence, based on the recent decision of our supreme court in *People v. Evans*, 174 Ill. 2d 320 (1996). The State argues that, because his sentence was entered as part of a negotiated guilty plea, defendant was bound to file a motion to withdraw the negotiated guilty plea. Because defendant did not do so, the State maintains, he is precluded from challenging his sentence on appeal.

*Evans* is a consolidation of two cases, *People v. Meeks*, 275 Ill. App. 3d ____ (unpublished order under Supreme Court Rule 23), and *People v. Evans*, 275 Ill. App. 3d ____ (unpublished order under Supreme Court Rule 23). In *Meeks*, the defendant and the State

negotiated a plea agreement whereby Meeks would plead guilty to one charge; in exchange, the State would move to dismiss two other charges, several other pending charges, and recommend a determinate sentence of 10 years' imprisonment. The defendant in *Evans* negotiated a plea agreement with the State whereby Evans would plead guilty to two charges; in exchange, the State would move to dismiss a third charge and recommend concurrent sentences of 11 and 5 years' imprisonment, to serve concurrently with other sentences previously imposed in another county. The trial courts accepted the negotiated plea agreements and sentenced the defendants to the recommended prison terms. Following the entry of the trial court's judgment, each defendant then sought to reduce his sentence by filing a motion to reconsider the sentence under Supreme Court Rule 604(d) (145 Ill. 2d R. 604(d)).

Our supreme court analyzed the application of Supreme Court Rule 604(d) to negotiated guilty pleas, as opposed to open guilty pleas. The *Evans* court applied contract law principles to the consolidated cases because the defendant and the State agreed that the defendant would plead guilty to certain charges, and the State would (1) dismiss other charges, and (2) recommend a *specific* sentence. *Evans*, 174 Ill. 2d at 327. "[U]nder these circumstances," the court stated, "the guilty plea and the sentence 'go hand in hand' as material elements of the plea bargain." *Evans*, 174 Ill. 2d at 332. The supreme court, therefore, held that "following the entry of judgment on a negotiated guilty plea, even if a defendant wants to challenge only [her or] his sentence, [she or] he must move to withdraw the guilty plea and vacate the judgment." *Evans*, 174 Ill. 2d at 332. To hold otherwise, the court stated, would render meaningless the negotiated plea agreement entered into between the parties.

The *Evans* court seems to suggest that only two types of guilty pleas exist: open guilty pleas and negotiated guilty pleas. The court did not define "negotiated guilty plea," but defined "open guilty plea" in the context of defendants who plead guilty "without receiving any promises from the State in return." *Evans*, 174 Ill. 2d at 332. To some, this may imply that everything else is relegated to the category of "negotiated" guilty pleas. As a result of this implication, the State argues, defendants wishing to challenge their sentence pursuant to anything other than an open plea must first move to withdraw their guilty plea and vacate the judgment entered thereon.

The State's position is overly simplistic. The criminal justice system is blessed with a panoply of negotiated guilty pleas. See generally 2 W. La Fave & J. Israel, Criminal Procedure § 20 (1984) (discussing guilty pleas and providing examples). Negotiated guilty

pleas are generally the result of an agreement between the defendant and the State. The two parties usually agree upon two major areas, taken singularly or in combination: charging matters and sentencing matters. One form of negotiated plea consists of an arrangement whereby the defendant and the State agree that the defendant will plead guilty to a lesser offense than the actual crime, perhaps to limit the trial court's sentencing discretion or to avoid a record of conviction on the more serious charge. Other forms of negotiated pleas exist whereby the parties agree that the defendant will plead guilty to the original charge in exchange for a specific disposition, such as a certain sentence or a promise of leniency or a request for probation. Yet another form consists of the defendant pleading guilty to a charge in exchange for the State's promise to drop or not file additional charges.

Combining the charging issues and sentencing issues may lead to a negotiated plea with the defendant pleading guilty to a charge or charges in exchange for the State's dismissal of other charges and a period-specific sentence. See *Evans*, 174 Ill. 2d 320. Another combination may occur when the defendant pleads guilty and the State agrees to drop other charges and recommend a minimum and maximum sentencing range. See *People v. Catron*, 285 Ill. App. 3d 36 (1996). Yet another may consist of the defendant pleading guilty to certain charges in exchange for a dismissal of other charges and a sentence not to exceed a certain number of years. See *People v. Wilson*, 286 Ill. App. 3d 169 (1997).

■ With regard to sentencing issues, we are mindful that imposing a sentence upon a defendant is the function of the trial court, not the prosecutor. See 730 ILCS 5/5—8—1 (West Supp. 1995). It, therefore, follows that, even if the defendant and the State were to agree upon a specific sentence, the trial court possesses the ultimate authority and discretion to impose that specific sentence, decrease the length of the agreed-upon sentence, or increase the defendant's incarceration, subject to the established statutory guidelines.

We recognize the difference of opinion on this issue among the districts of the Illinois Appellate Court since *Evans* was decided. In *People v. Leach*, 284 Ill. App. 3d 4 (2d Dist. 1996), the defendant and the State entered into a negotiated plea agreement whereby the defendant would plead guilty to a charge of escape and the State would recommend a sentence of two years' imprisonment, served consecutive to a sentence imposed for a separate conviction. The trial court accepted the plea agreement; subsequently, the defendant petitioned to have his sentences run concurrently. The Appellate Court, Second District, held that the defendant was not entitled to a reduction of

his negotiated sentence because it had been specifically bargained for in his plea agreement, similar to the defendants in *Evans*. *Leach*, 284 Ill. App. 3d at 6. Thus, the *Leach* court noted relief could only be obtained by moving to withdraw his guilty plea and vacate the judgment, as well as showing that granting the motion was necessary to correct a manifest injustice. *Leach*, 284 Ill. App. 3d at 6-7.

In *People v. Catron*, 285 Ill. App. 3d 36 (4th Dist. 1996), the defendant pleaded guilty to six counts of residential burglary in exchange for a recommended prison sentence ranging from 4 to 15 years. The trial court imposed concurrent 15-year sentences, and the defendant appealed, claiming the sentence was excessive. The Appellate Court, Fourth District, applied contract principles relied upon in *Evans* and affirmed, stating that the defendant implicitly conceded that a 15-year sentence could not be excessive because he had agreed to a range of sentences. The *Catron* court proceeded:

> "We recognize that *Evans* did not consider the situation where the alleged sentencing was allowed to be something more than a mere claim that the sentence is excessive. One such claim is that which defendant attempts to raise here, namely, that the trial court gave him the maximum sentence based, in part, upon improper consideration of a factor inherent in the crime. Had defendant raised this issue in the trial court, we do not believe *Evans* would foreclose a motion to reconsider sentence without vacating the plea." *Catron*, 285 Ill. App. 3d at 37-38.

Similar to the present case is *People v. Wilson*, 286 Ill. App. 3d 169 (2d Dist. 1997). In *Wilson*, the defendant entered a negotiated plea of guilty to various offenses. In exchange, the State agreed to nol-pros one charge and recommend a sentence cap of nine years' imprisonment for the other three charges. The trial court accepted the plea agreement and imposed concurrent sentences of nine years' imprisonment. Defendant appealed. The *Wilson* court distinguished *Evans*, in that the defendants in *Evans* agreed to specific sentences in exchange for their guilty pleas and the trial courts exercised no discretion in sentencing the defendants. The Appellate Court, Second District, thus held that, because the trial court had the discretion to determine the appropriate sentence for defendant, the defendant could raise the issue on appeal as to whether the trial court abused its discretion when it sentenced the defendant without defendant moving to withdraw his plea. *Wilson*, 286 Ill. App. 3d at 172-73.

In *People v. Johnson*, 286 Ill. App. 3d 597 (1997), the State agreed to dismiss several charges in exchange for the defendant's guilty plea to the remaining counts. No agreement on sentencing was reached. The Appellate Court, Second District, held that the defendant was

not precluded from challenging the trial court's sentence only because the imposition of the sentence was left to the discretion of the trial court.

Finally, in *People v. Sanders*, 286 Ill. App. 3d 1042 (1997), the defendant pleaded guilty to one charge of first degree murder in exchange for a sentencing cap of 45 years. The trial court imposed a 45-year sentence. The trial court subsequently denied the defendant's motion to withdraw his guilty plea. Defendant appealed, claiming his sentence was excessive. The Appellate Court, Third District, modeled its ruling after *Evans* and *Catron*. The *Sanders* court simply affirmed, determining that the defendant knew that the trial court could impose a 45-year sentence when he entered his negotiated plea. By agreeing to the plea, the *Sanders* court stated, the defendant effectively agreed that a 45-year sentence was not manifestly unjust. *Sanders*, 286 Ill. App. 3d at 1043.

However, the specially concurring opinion by Justice Holdrige maintains that *Catron* impermissibly expanded the *Evans* holding and analogized the plea in *Sanders* to an open plea. Justice Holdridge would have allowed a discussion on the merits of the defendant's claim because "[w]here a defendant pleads guilty in exchange for a sentencing cap, the trial court will choose from a range of potential sentences." *Sanders*, 286 Ill. App. 3d at 1045 (Holdridge, J., specially concurring). Further, "there is always the danger that the court will not properly exercise its discretion. To prohibit such a defendant from appealing an excessive sentence simply because [the defendant] 'bargained for' that range is *** fundamentally unfair." *Sanders*, 286 Ill. App. 3d at 1045 (Holdridge, J., specially concurring).

■ In each of the cases permitting review of a defendant's sentence following a negotiated plea agreement without requiring a motion to withdraw the plea, the common denominator of law seems to be that when a trial court exercises any discretion in imposing a sentence, a defendant should be allowed to challenge that sentence to determine whether the trial court abused its discretion. In the present case, defendant entered a negotiated plea of guilty to one count of aggravated criminal sexual assault and one count of aggravated criminal sexual abuse. In return, the State agreed to dismiss three other counts of aggravated criminal sexual assault and recommend a sentence cap of 25 years' imprisonment. Because the trial court exercised its discretion to impose a sentence of 20 years' imprisonment for defendant, we determine that defendant's subsequent motion to reconsider only his sentence was proper and we, therefore, have jurisdiction to review the trial court's order denying it.

Defendant contends that the trial court erred in refusing to

consider certain mitigating factors of defendant, *i.e.*, that defendant is mentally retarded, functions at a childlike level, suffers from a severe personality disorder, and did not intend to cause serious harm to the victim.

■ Reviewing courts have the power under Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)) to reduce sentences. The determination and imposition of a sentence is a matter involving considerable judicial discretion, and our standard of review to be applied is whether the trial court abused its discretion. *People v. Shaw*, 278 Ill. App. 3d 939, 953 (1996), citing *People v. Harris*, 187 Ill. App. 3d 832, 843 (1989); see also *People v. Streit*, 142 Ill. 2d 13, 15 (1991). The trial court has broad discretionary powers in choosing the appropriate sentence a defendant should receive. *People v. Jones*, 168 Ill. 2d 367, 373 (1995). The trial court is in a superior position to assess the credibility of the witnesses and to weigh the evidence presented at the sentencing hearing. *Jones*, 168 Ill. 2d at 373, citing *People v. Younger*, 112 Ill. 2d 422, 427 (1986), quoting *People v. La Pointe*, 88 Ill. 2d 482, 492-93 (1981). Further, a reviewing court will not substitute its judgment for that of a sentencing judge simply because it might have balanced the sentencing factors differently. *Streit*, 142 Ill. 2d at 19, citing *People v. Pittman*, 93 Ill. 2d 169, 178 (1982); *People v. Orsby*, 286 Ill. App. 3d 142, 153 (1996).

■ After reviewing the record, we find that the trial court did not abuse its discretion in sentencing defendant to 20 years' imprisonment. The record shows that the trial court did not merely give "lip service" to defendant's mitigating factors, but thoroughly considered the evidence presented and weighed the appropriate factors in aggravation and mitigation that influenced his sentencing decision. Factors specifically mentioned were defendant's use of a vibrator on the victim; defendant's cognizance that he was on probation at the time of the assault; defendant's functioning at the top of the mentally deficient range; and defendant's suffering from a personality disorder. The trial court also took into account defendant's criminal history and his failure to maintain his probation. The trial court further considered defendant's explanation that he was turned away from counseling approximately two weeks prior to the instant offense occurring. Nevertheless, weighing the mitigating evidence against the aggravating circumstances, the trial court chose to impose a lengthy term of imprisonment, stating that defendant is a danger to the community and needed to be sentenced for a lengthy term. In light of these observations of the trial court at the sentencing hearing and the hearing to reconsider defendant's sentence, the record fails to demonstrate an abuse of discretion, and we see no reason to disturb the sentence.

■ Defendant's second issue on appeal is that the mittimus must be corrected to conform to the trial court's oral pronouncement of defendant's conviction. During the sentencing hearing, the trial court stated:

> "[T]his sentence is on Count 1 [aggravated criminal sexual assault] ***. Count 5 [aggravated criminal sexual abuse] *** arises from the same conduct in the same transaction as the other offense, Count 1, and as a result I enter no judgment of conviction on that, and judgment of conviction is just entered on Count 1 ***."

The mittimus contained in the common-law record shows that defendant was convicted of both aggravated criminal sexual assault and aggravated criminal sexual abuse.

Where the report of proceedings conflicts with the common-law record, the report of proceedings will prevail and the common-law record must be corrected. *People v. Peeples*, 155 Ill. 2d 422, 496 (1993); *People v. Stingley*, 277 Ill. App. 3d 239, 242 (1995); see also *People v. Mitchell*, 234 Ill. App. 3d 912, 921 (1992) (holding that misstatements made on a mittimus should be corrected to reflect the proper judgment of the court). A reviewing court has a duty to resolve contradictions that exist between the common-law record and the report of proceedings by looking at the record as a whole. *Stingley*, 277 Ill. App. 3d at 242, citing *People v. Fike*, 117 Ill. 2d 49, 56 (1987).

In the sentencing hearing, the trial court imposed a 20-year sentence of incarceration upon defendant. The trial court proceeded to inform defendant of his right to appeal, procedures that defendant must comply with should he desire an appeal, and the nature of the hearings that would take place if defendant continued in his appeal. After defendant indicated his understanding of the trial court's instructions, the trial court specifically made its statements regarding the judgment of conviction as to aggravated criminal sexual assault. The only other issue discussed following the trial court's judgment of conviction concerned the certification of defendant as an habitual child sex offender.

Upon review of the record as a whole, we find that the plain language of the transcript at the sentencing proceeding reveals that the trial court entered a judgment of conviction as to aggravated criminal sexual assault and entered no judgment of conviction as to aggravated criminal sexual abuse. Remand is unnecessary because this court has the authority to directly order the clerk of the circuit court to make the necessary correction. 134 Ill. 2d R. 615(b)(1); *People v. McCray*, 273 Ill. App. 3d 396, 403 (1995). Accordingly, we direct the clerk to amend the mittimus to reflect only defendant's conviction of aggravated criminal sexual assault.

318

For the reasons stated, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

INGLIS and THOMAS, JJ., concur.