NOS. 4-97-0003, 4-97-0027 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from

Plaintiff-Appellee, )  Circuit Court of

v. )  Macon County

JAMES C. ECONOMY, )  Nos. 96CF14

Defendant-Appellant. )       92CF833

)

)  Honorable

)  Frank W. Lincoln,

)  Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

In September 1996, defendant James C. Economy en­tered a nego­ti­at­ed guilty plea in Macon County case No. 96-CF-14 to charg­es of un­law­ful pos­ses­sion of a con­trolled sub­stance (720 ILCS 570/402(c) (West Supp. 1995)), bat­tery (720 ILCS 5/12-3 (West 1994)), crimi­nal property damage under $300 (720 ILCS 5/21-1(1)(a) (West Supp. 1995)), and viola­tion of a condition of pro­ba­tion imposed in Macon County case No. 92-CF-833 after an earli­er con­vic­tion of un­law­ful pos­ses­sion of a con­trolled substance (720 ILCS 570/402(c) (West 1992)).  After a sentenc­ing hear­ing in both cases in Octo­ber 1996, the trial court de­nied defendant's re­quest for pro­ba­tion con­di­tioned on treat­ment through the Treat­ment Alter­na­tives for Safer Commu­ni­ties (TASC) pro­gram.  Defen­dant was sen­tenced to concurrent two-year pris­on terms for the unlaw­ful posses­sion charg­es in case Nos. 92-CF-833 and 96-CF-14.  De­fen­dant ap­peals his sentences, docketed here as Nos. 4-97-0027 and 4-97-0003, re­spectively, and the appeals have been con­soli-

­dated.  He argues the trial court acted in an arbi­trary manner or abused its dis­cretion in denying probation under the supervision of a designat­ed program for treatment pursuant to section 40-10 of the Alco­holism and Other Drug Abuse and Depen­dency Act (20 ILCS 301/40-10 (West 1994)) in the fol­low­ing find­ings:  (1) he was unlikely to be rehabili­tated through treat­ment; (2) there was no signifi­cant relation­ship between his ad­diction and the crime committed; and (3) his im­prisonment is necessary for the protec­tion of the pub­lic.  We af­firm.

I.  BACKGROUND

On Friday, October 9, 1992, defendant was arrested carrying about 1.5 grams of crack cocaine.  De­fen­dant ad­mit­ted using co­caine for about a year.  On Janu­ary 19, 1993, he was con­vict­ed in case No. 92-CF-833 of un­law­ful pos­ses­sion of a con­trolled sub­stance.  720 ILCS 570/402(c) (West 1992).  On June 7, 1993, de­fen­dant was sen­tenced to 24 months of proba­tion with conditions including sub­mis­sion of a drug evalua­tion and com­ple­tion of any rec­om­mend­ed drug treat­ment pro­gram.

In December 1993, defendant entered an outpatient drug treatment program at St. Mary's Hospital (St. Mary's) in Decatur, Illi­nois.  Treatment specialists there recommended he be ad­mit­ted to a more intensive program at the Rush Behavioral Cen­ter (Rush Center) in Chi­ca­go, but defendant refused because he want­ed to stay in the Decatur area in order to contin­ue his law prac­tice.  Defendant was discharged from the program in Au­gust 1994.  Defen­dant submitted to random drug test­ing from August 1994 to March 1995 and passed a total of 23 drug screens without any indication of drug use.

On June 22, 1995, defendant pleaded guilty to a charge of domestic battery in case No. 95-CM-1124.  This conduct also  vio­lat­ed defendant's pro­ba­tion condi­tions in No. 92-CF-833.  He admitted the allegations of a petition to revoke based thereon and was fined $288, plus costs, and his pro­ba­tion was ex­tend­ed for 12 months under the same con­di­tions as be­fore.

The facts underlying case No. 96-CF-14 are as follows.  On Decem­ber 27, 1995, police were called to a Decatur resi­dence rented by defen­dant.  One of the windows to the house was bro­ken, and the offi­cers could hear someone inside calling for help.  Po­lice entered and found de­fen­dant sit­ting on the stairs.  He had cuts over several parts of his body and blood was drip­ping from the area near his crotch.  There were blood splatters on the wall and the premises were in disarray.

The officers attempted to speak with defendant, but he was incoherent.  When they attempted to get defendant to sit in a chair, he attacked one of the officers.  Defendant was thrown to the couch but got up again and jumped on top of the two offi­cers.  He was subdued and handcuffed.  De­fen­dant was taken to St. Mary's, and then to the Rush Cen­ter, where he re­mained in con­tinuous treatment until his sen­tenc­ing hearing on October 16, 1996.

As a result of the December 1995 incident, defendant was charged with aggra­vated bat­tery (720 ILCS 5/12-4(b)(6) (West 1994)), a Class 3 felo­ny carrying a nonextended pris­on term of 2 to 5 years (730 ILCS 5/5-8-1(a)(6) (West Supp. 1995)) and an ex­tend­ed term of 5 to 10 years (730 ILCS 5/5-8-2 (West 1994)); un­law­ful pos­ses­sion of a con­trolled sub­stance and crim­i­nal prop­erty damage in excess of $300, Class 4 felo­nies (720 ILCS 570/402(c), 720 ILCS 5/21-1(1)(a) (West Supp. 1995)), car­rying a nonextended pris­on term of one to three years (730 ILCS 5/5-8-1(a)(7) (West Supp. 1995)) and an ex­tend­ed term of three to six years (730 ILCS 5/5-8-2(a)(6) (West 1994)); and battery and crim­i­nal prop­erty dam­age under $300, Class A mis­de­mean­ors (720 ILCS 5/12-3(b) (West 1994); 720 ILCS 5/21-1(2) (West Supp. 1995)), permit­ting a term of up to one year's incarceration (730 ILCS 5/5-8-3(a)(1) (West 1994)).

Defendant entered a partially negotiated plea agree­ment.  The State agreed to dismiss the charge of ag­gra­vat­ed bat­tery and the felony criminal property dam­age charge.  The State also agreed to recommend any prison terms be served concur­rently and no extended terms be imposed.  In ex­change, de­fen­dant agreed to plead guilty to the re­main­ing charg­es and fore­go any defense of intoxica­tion.

At the joint sentencing hearing in the cases, defendant re­quest­ed to be sen­tenced to proba­tion with treatment under the TASC pro­gram.  Sev­er­al wit­ness­es tes­tified on his be­half.  The State presented no wit­ness­es.  De­fen­dant filed a writ­ten re­port by a TASC drug evalua­tor indi­cat­ing he was eligi­ble and ac­cept­able for the TASC pro­gram.  The State request­ed defen­dant be sentenced to a prison term.

The trial court sentenced defen­dant to prison.  In case No. 92-CF-833, on revocation of his probation, defendant received two years in prison on the 1992 unlawful pos­session conviction, with cred­it for time served, and one year of manda­to­ry super­vised re­lease.  In case No. 96-CF-14, de­fen­dant re­ceived a concurrent two-year term for the December 1995 un­law­ful pos­ses­sion charge, and was fined $250 and costs for the mis­demeanor battery and property damage charges.

The court de­nied defendant's request for probation with treatment in the TASC program.  The trial court believ­ed the imprison­ment of defen­dant was neces­sary for the protec­tion of the public, consid­ering the harm to the victims of his bat­tery, do­mestic battery, and criminal prop­erty damage.  The court also noted there was no significant relationship between his drug use and the domestic battery.  Final­ly, the court noted one of defendant's wit­ness­es tes­ti­fied the TASC pro­gram has a success rate of only 35%.  Given this statis­tic, and defendant's re­lapse and com­mis­sion of sev­eral offenses after re­ceiving drug treat­ment, the court concluded defen­dant was un­like­ly to be rehabil­i­tated by treat­ment.  On De­cem­ber 4, 1996, de­fen­dant filed his first-amend­ed mo­tion to re­con­sid­er sen­tence in each case.  On De­cem­ber 6, 1996, this mo­tion was de­nied.  Defen­dant never filed a motion to with­draw his guilty plea.

II.  ANALYSIS

As a threshold matter, the State argues defendant waived this ap­peal be­cause he failed to file a motion to with­draw his negotiat­ed guilty plea and va­cate the judgment.  We agree defendant has waived sev­eral of his argu­ments.  Gen­er­al­ly, in order to per­fect an ap­peal of a sen­tence, a defen­dant must file a mo­tion to recon­sid­er the sen­tence.  145 Ill. 2d R. 604(d).  De­fen­dant did so here.  How­ever, when a de­fen­dant ap­peals a sen­tence im­posed pur­su­ant to a nego­tiated plea agree­ment, the defen­dant must in­stead (1) move to with­draw the guilty plea and va­cate the judg­ment and (2) show grant­ing the judg­ment is nec­es­sary to cor­rect a mani­fest in­justice.  
Peo­ple v. Evans
, 174 Ill. 2d 320, 332, 673 N.E.2d 244, 250 (1996).

Defendant seeks to distinguish 
Evans
 because the plea agree­ments there provided for the State to recommend spe­cific prison terms.  
Evans
, 174 Ill. 2d at 327, 673 N.E.2d at 247.  Here, by contrast, the State agreed to dismiss some charges and, if defendant were to be im­pris­oned, seek con­cur­rent rath­er than con­sec­u­tive prison terms and no ex­tend­ed term.  
Defendant con­tends 
Evans
 does not apply to such par­tial­ly negoti­ated guilty pleas.

Defendant notes the sec­ond dis­trict has not fol­lowed the rule from 
Evans
 in cases where the plea agreement does not in­clude a rec­om­men­da­tion of a specif­ic prison term.  See 
Peo­ple v. Wil­son
, 286 Ill. App. 3d 169, 172, 675 N.E.2d 292, 294 (1997); 
Peo­ple v. John­son
, 286 Ill. App. 3d 597, 600, 676 N.E.2d 1040, 1042 (1997) (refusing to require a with­draw­al of guilty plea where State dropped charg­es pur­suant to plea agree­ment but did not limit sentencing dis­cre­tion of tri­al court with regard to charg­es not dropped).

Both cases rely on the following language from 
Evans
 (174 Ill. 2d at 332, 673 N.E.2d at 250):

"Our review of 
[
People v.
]
Wilk
[, 124 Ill. 2d 93, 529 N.E.2d 218 (1988),] and [
People v.
] 
Wallace
[, 143 Ill. 2d 59, 570 N.E.2d 334 (1991),] re­veals that the pleas in­volved in those cases were open guilty pleas.  In other words, the defendants pled guilty without receiv­ing any prom­ises from the State in return.  Following a defendant's open guilty plea, the trial court exercises its dis­cre­tion and determines the sentence to be im­posed.  Both good public policy and common sense di­ctate that defendants who enter open guilty pleas be allowed to challenge only their sentences without being required to with­draw their guilty pleas.  See 
Wilk
, 124 Ill. 2d 93[, 529 N.E.2d 218]; 
Wallace
, 143 Ill. 2d 59[, 570 N.E.2d 334]."

See 
Johnson
, 286 Ill. App. 3d at 600, 676 N.E.2d at 1042; 
Wil­son
, 286 Ill. App. 3d at 172, 675 N.E.2d at 294, quoting 
Evans
, 174 Ill. 2d at 332, 673 N.E.2d at 250.

The sec­ond dis­trict rea­soned there is no logical basis for chal­lenging a trial court's discretion when imposing a "ful­ly nego­ti­at­ed" plea because the trial court did not, in fact, exer­cise any discretion.  
Johnson
, 286 Ill. App. 3d at 600, 676  N.E.2d at 1042.  However, when a partially negotiated plea leaves room for the trial court to weigh the facts and exer­cise its own dis­cre­tion, there is a logical basis for ap­pealing the trial court's judgment.  See 
Wilson
, 286 Ill. App. 3d at 172, 675 N.E.2d at 294.  This is consistent with the second dis­trict's approach prior to 
Evans
.  See 
People v. Soles
, 226 Ill. App. 3d 944, 947, 590 N.E.2d 104, 105 (1992) (by entering partially nego­tiated plea agreement defendant agrees to accept sentence within statutory range only if trial court properly exercised discre­tion in imposing it).

Contrary to 
the second district's approach, the pri­mary con­cern of the 
Evans
 court was not the logi­cal basis for re­view­ing the tri­al court, but a con­cern for pre­serving the bargain reached be­tween the de­fen­dant and the State.  Immediately after the language
 quoted by 
Johnson
 and 
Wil­son
, the 
Evans
 opin­ion stat­ed the following:

"The reasoning utilized by this court in 
Wilk
 *** does not apply to negotiated guilty plea agree­ments.  We agree with the State that, under these circumstanc­es, the guilty plea and the sentence 'go hand in hand' as material ele­ments of the plea bar­gain.  To permit a defendant to challenge his sentence without moving to withdraw the guilty plea in these instances would viti­ate the negotiated plea agreement he entered into with the State."  
Evans
, 174 Ill. 2d at 332, 673 N.E.2d at 250.

Earlier in the 
Evans
 opinion, the court made it clear it was trying to prevent a defendant from obtaining the benefit of his plea agreement with the State by limiting the trial court's sen­tencing dis­cretion and then obtaining a further benefit by reneg­ing on the agree­ment and challenging the trial court's exercise of discre­tion on appeal.  See 
Evans
, 174 Ill. 2d at 327, 673 N.E.2d at 247-48.  

In 
Peo­ple v. Catron
, 285 Ill. App. 3d 36, 37, 674 N.E.2d 141, 142 (1996), this district held it would com­pro­mise this policy if de­fen­dant were al­lowed to ap­peal a sen­tence en­tered after a par­tially nego­tiated plea without fil­ing a mo­tion to withdraw his plea.  
The 
Catron
 opin­ion rea­soned when a de­fen­dant agrees to a poten­tial range of sentenc­es in a plea agree­ment, he implic­itly con­cedes any sentence imposed within the range cannot be exces­sive.  
Catron
, 285 Ill. App. 3d at 37, 674 N.E.2d at 142.  Re­cent­ly, the third dis­trict also adopted this ap­proach.  See 
Peo­ple v. Sand­ers
, 286 Ill. App. 3d 1042, 1044, 678 N.E.2d 86, 88 (1997).

The analysis from 
Catron
 applies with particular force here.  In exchange for defendant's guilty plea, the State agreed not to seek con­sec­u­tive or ex­tend­ed pris­on terms.  This part of the plea agreement would be mean­ing­less if, as defen­dant now argues, any pris­on term would be re­versible as an abuse of dis­cretion.  The risk of a prison term and the guilty plea went "hand in hand" as material elements of the plea bar­gain.

The approach in 
Catron
 has faced criticism.  In 
People v. Smith
, 288 Ill. App. 3d 308, 312-13, ____ N.E.2d ____, ____ (1997), the sec­ond dis­trict rea­soned it is over­ly sim­plis­tic to draw a dis­tinc­tion that treats all nego­ti­ated pleas the same.  
It noted nego­tiat­ed pleas 
can involve both sen­tenc­ing and charg­ing mat­ters (
Smith
, 288 Ill. App. 3d at 313, ___ N.E.2d at ___), and it re­peat­ed the argu­ment from 
John­son
 and 
Wil­son
 that the 
Evans
 opin­ion was not in­tend­ed to ex­tend to mat­ters where the trial court re­tains some dis­cre­tion (
Smith
, 288 Ill. App. 3d at 315,  ____ N.E.2d at ____).

This criticism is flawed.  First, the plain language of 
Ev­ans
 treats all negotiated pleas the same.  
Evans
 clearly de­fines an "open guilty plea" agree­ment to mean an agreement where "de­fen­dants pled guilty with­out re­ceiv­ing 
any
 promises from the State in re­turn."  (Emphasis added.)  
Evans
, 174 Ill. 2d at 332, 673 N.E.2d at 250.  It also clear­ly holds "the mo­tion-to-re­con­sid­er-sen­tence pro­vi­sions of Rule 604(d) apply 
only
 to open guil­ty pleas" (em­phasis added) (
Ev­ans
, 174 Ill. 2d at 332, 673 N.E.2d at 250), thereby imposing the motion-to-with­draw-plea provi­sion in Rule 604(d) on all nego­tiated pleas, including this one.

Second, whether a defendant pleads guilty in exchange for a spe­cif­ic term or a lesser charge, his in­ter­est in the bar­gain is the same:  to re­duce the possible pun­ish­ment for his of­fense.  The bargain between the defendant and the State is no less dam­aged by defendant's appeal just because the agree­ment is less specific, 
i.e.
, not all aspects of the case(s) are disposed by the plea negotiated.

Catron
 has also been criticized because it leaves room open for trial court abuses in sentencing.  In a special concur­rence in 
Sand­ers
, Justice Holdridge argued:

"Where a de­fendant pleads guilty in exchange for a sen­tenc­ing cap, the trial court will choose from a range of poten­tial sen­tences.  As with an open plea, there is always the danger that the court will not properly exer­cise its discretion.  To prohibit such a defendant from ap­pealing an excessive sen­tence simply because he 'bargained for' that range is, in my opin­ion, funda­mentally un­fair."  
Sanders
, 286 Ill. App. 3d at 1045, 678 N.E.2d at 88-89 (Holdridge, J., spe­cially con­curring). 

We also reject this argument.  First, it is unclear why it is un­fair to give a defendant that for which he bargained.  If a defen­dant does not wish to be subject to the full range of sen­tences, he should try to bar­gain with the prosecutor for a more limited range.  Second, Rule 604(d) does not bar a defen­dant from appealing an excessive sentence, but instead requires him to withdraw his guilty plea and estab­lish the sen­tence cor­rec­tion is neces­sary to correct a manifest injus­tice.  
Evans
, 174 Ill. 2d at 332, 673 N.E.2d at 250.

Finally, 
even without a motion to withdraw, 
Catron
 will not bar ev­ery claim of er­ror.  A defendant can still pro­ceed on a motion to re­con­sider where the de­fen­dant ap­peals be­cause the trial court mis­ap­plied the law by con­sidering im­prop­er sen­tenc­ing fac­tors, and not mere­ly be­cause the sen­tence was ex­ces­sive (
Catron
, 285 Ill. App. 3d at 37-38, 674 N.E.2d at 142), so long as that issue was in­cluded in his mo­tion to re­consider sentence (145 Ill. 2d R. 604(d)).

One of defendant's arguments falls within this excep­tion.  De­fendant committed the offense of do­mes­tic vio­lence af­ter he started receiving treat­ment and there was no evi­dence defen­dant was under the influence of drugs at the time of the offense.  A defen­dant will not be sen­tenced to proba­tion with TASC supervi­sion if the trial court finds no sig­nif­i­cant rela­tion­ship between the defendant's drug use and the crime com­mit­ted.  20 ILCS 301/40-10(b) (West 1994).  

Defen­dant ar­gues the trial court misap­plied TASC guide­lines when it relied on his domestic battery convic­tion as a rea­son to find no signifi­cant rela­tion­ship exists be­tween the addic­tion of the defendant and the crime com­mitted, be­cause do­mestic vio­lence 
was
 
not
 one of the crimes for which he was being sen­tenced.  The court specifi­cally stated defendant's other crimes were sig­nifi­cantly relat­ed to his drug use and no party contests this find­ing on appeal.  Defen­dant pre­served this ar­gument for re­view by rais­ing it in his motion to re­con­sider sen­tence.  145 Ill. 2d R. 604(d).

The appellate record clearly supports the trial court's decision.  First, because the trial court could properly consider the domestic violence conviction for an alter­native purpose, defendant was not like­ly to be prej­u­diced by the trial court's alleged error.  The trial court may deny de­fen­dant en­roll­ment in the TASC pro­gram if it de­ter­mines impris­onment is neces­sary to pro­tect the pub­lic.  20 ILCS 301/40-10(b) (West 1994).  A trial court is not to con­sid­er just the cir­cum­stances of the of­fense being sen­tenced in de­ter­mining whether he pos­es a threat to the pub­lic, but also the his­to­ry, char­ac­ter and con­di­tion of the indi­vidu­al.  20 ILCS 301/40-10(b) (West 1994).  Even though defendant's drug use was sig­nifi­cant­ly re­lat­ed to the crimes for which he was being sen­tenced, the trial court was not bound to ig­nore the un­der­ly­ing po­ten­tial for vio­lence re­flect­ed in these crimes.  While defendant's do­mestic vio­lence offense was not one of the crimes for which defendant was being sentenced, that con­viction could prop­er­ly be con­sid­ered to de­ter­mine how much vio­lence poten­tial re­mained when de­fen­dant was so­ber.  
Cf.
 
Peo­ple v. White­head
, 171 Ill. App. 3d 900, 907, 525 N.E.2d 1084, 1088 (1988) (de­spite general rule against ad­mitting evi­dence of defendant's prior bad acts to es­tablish crim­inal propen­sity and likeli­hood defendant com­mitted crime, defendant's prior threats were ad­mis­si­ble to dem­on­strate defendant's violent act was not the prod­uct of tem­po­rary in­sani­ty or intoxi­ca­tion).

Regardless of whether the trial court also considered the domestic violence conviction in determining whether defendant's addiction was significantly related to his crimes, the find­ings re­gard­ing the need to pro­tect the pub­lic from de­fen­dant and the low like­li­hood of reha­bilita­tion pro­vide suffi­cient grounds for its deci­sion.  See 
Peo­ple v. Gernant
, 242 Ill. App. 3d 833, 835, 610 N.E.2d 722, 724 (1993).  Defendant was a repeat offender who had already been given the opportunity to rehabili­tate himself.  He was given a second chance on probation after he committed domestic battery.  He failed probation a second time.  Several of his offenses had victims and demonstrated a propensity for vio­lence.  The trial court did not err in rejecting proba­tion.  De­fen­dant has waived his ap­peal as to these alterna­tive grounds and moreover, upon re­view­ing the record we find ade­quate sup­port for the trial court's find­ings regarding them.  Ac­cord­ing­ly, we af­firm.  See 
L
eonardi v. Loyola Uni­ver­si­ty
, 168 Ill. 2d 83, 97, 658 N.E.2d 450, 457 (1995) (a re­view­ing court may sus­tain a deci­sion on any grounds called for by the record, re­gard­less of the origi­nal basis for the deci­sion and regardless of the accura­cy of the reasoning).

III.  CONCLUSION

We affirm the sen­tence im­posed by the trial court.

Affirmed.

GARMAN and GREEN, JJ., concur.