THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RANDY L. PAYNE, Defendant-Appellant.

Fourth District    No. 4—96—0455

Opinion filed January 14, 1998.

Craig H. DeArmond, of Kurth & DeArmond, of Danville, for appellant.

Michael D. Clary, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

After pleading guilty to one count of first degree murder, defendant was sentenced to 70 years in prison. 720 ILCS 5/9—1 (West 1994). Defendant appeals the sentence imposed pursuant to his guilty plea. We affirm.

On December 15, 1993, 18-year-old defendant Randy Payne and Robert Dieu together travelled to Williams Street in Danville to purchase crack cocaine. Defendant brought the money to buy the crack. When they arrived at Williams Street, Steven Butler approached their vehicle and asked them what they needed. After defendant and Dieu told Butler they wanted crack, Butler said he could get it for them, took the money from defendant, and ran away without giving them the drugs.

Defendant and Dieu drove around looking for Butler, but eventually returned to defendant's house when they did not find him. At the house, they smoked what crack they had. The two drove back to Williams Street intending to obtain either the return of their money or the crack Butler owed them. Defendant brought a handgun from his house, which he gave to Dieu, who slid it beneath the front passenger seat of the car.

Defendant and Dieu found Butler at Williams Street. After telling him they had more money, Butler got into the backseat of the car. Dieu then displayed the gun defendant brought and confronted Butler about the missing money and crack. Butler said that he could

get the crack but that they would have to go to a different location. Defendant drove toward Lake Vermilion, outside Danville, not following Butler's directions to the place he said the drugs were located, while Dieu continued to show the gun and tell Butler that they either wanted their money back or the drugs. Butler became scared and began to strip off his clothes, tossing them in the front seat, stating he did not have the money or the drugs. Dieu threw back Butler's clothes saying they wanted the money or the drugs, while Butler repeated he had neither.

During the drive, Dieu had the gun when a shot discharged through the seat, striking Butler in the thigh. Butler began crying and begging that he not be killed. Defendant stopped the car between two cornfields. Dieu then put the gun on the seat between himself and the defendant. Defendant told Butler to get out of the car. Butler exited the car and attempted to run away, though he had difficulty since he had been shot. Defendant picked up the gun from the seat, exited the car, and fired a shot at Butler from approximately 20 to 25 feet away, hitting him in the back. Butler fell down and, as he was trying to crawl away, defendant stood over him and fired a final shot into his head from three to four feet away. Dieu watched the shootings from the car.

Dieu and defendant went back to defendant's home, where they cleaned gunpowder residue from Dieu's arm and cleaned the backseat of defendant's car, which was later disposed of. They found Butler's shoes on the back floorboard, sold them for $40 in order to buy crack, then later got the shoes back and burned them.

On December 16, 1993, Butler's body was found lying facedown in a ditch in a rural area north of Danville. The pathologist determined he died from multiple gunshot wounds to the thigh, the back, and the head, shortly after receiving them.

On January 5, 1994, defendant was arrested and charged with five counts of first degree murder and one count of armed robbery. On July 18, 1995, defendant entered a partially negotiated guilty plea to one count of first degree murder, and the State nol-prossed the remaining four counts of first degree murder and the armed robbery charge and was foreclosed from seeking either the death penalty or life imprisonment. Defendant was subject to a sentence of between 20 and 60 years or, if the court found extended-term sentencing applicable, to a sentence of between 60 and 100 years.

During defendant's sentencing hearings, several people testified about defendant's drug abuse. Dieu testified that he and defendant had used substantial amounts of crack for one to two years prior to Butler's murder and that they were high on crack most of the time.

Defendant's mother stated that defendant stole and cashed checks from her in order to buy crack. Two counselors from Bridgeway Recovery Center concluded defendant suffered from the late middle stages of polysubstance drug abuse. Two counselors from Fairbanks Hospital also testified that they found defendant to be polysubstance dependent from using alcohol, cannabis, and cocaine. One counselor described crack cocaine psychosis, where addicts are often delusional and paranoid, and said that, considering the extent of defendant's condition, she would expect him to be suffering from crack cocaine psychosis at times. The other Fairbanks counselor testified that at the time of Butler's shooting, defendant was obsessed with getting and using crack and that his preoccupation with crack would supersede any rational thought. Defendant's friends and family members noted that in the one to two years prior to the shooting, defendant's appearance and behavior began to deteriorate. He had withdrawn from normal activities, was not outgoing, and was physically unkempt. In exercising his right of allocution, defendant admitted that he abused alcohol, marijuana, and cocaine. He also apologized to the Butler family for the murder.

Defendant had only one prior offense at the time of the murder. He had been given six months' supervision as a juvenile for criminal damage to property.

After considering the evidence, the trial court found that because the killing was "exceptionally brutal or heinous" defendant was subject to extended-term sentencing and sentenced him to 70 years' imprisonment. On September 1, 1995, defendant filed a motion to reconsider sentence. The trial court denied the motion, and this appeal followed. On appeal, defendant contends that (1) the trial court's imposition of a 70-year sentence was excessive, and (2) the trial court erred in imposing an extended-term sentence.

The State asserts that in order to challenge his sentence, defendant was required to (1) move to withdraw his guilty plea and vacate the judgment and (2) show the granting of the motion was necessary to correct a manifest injustice. Defendant did neither. The State also argues that because defendant entered a negotiated plea, he implicitly conceded that any sentence from 20 to 100 years could not be excessive, so that he is precluded from challenging the length of his sentence.

■ When a defendant wants to challenge only his sentence after the entry of judgment on a negotiated guilty plea, he must move to withdraw the guilty plea and vacate the judgment. Consequently, the motion-to-reconsider-sentence provisions of Supreme Court Rule 604(d) (145 Ill. 2d R. 604(d)) do not apply to negotiated guilty pleas.

258

*People v. Evans*, 174 Ill. 2d 320, 332, 673 N.E.2d 244, 250 (1996). By agreeing to a potential range of sentences, a defendant implicitly concedes that a sentence imposed within the range cannot be excessive. A defendant who has entered a negotiated plea of guilty is entitled to complain only if the agreement has been broken. *People v. Catron*, 285 Ill. App. 3d 36, 37, 674 N.E.2d 141, 142 (1996); see also *People v. Economy*, 291 Ill. App. 3d 212, 218, 683 N.E.2d 919, 923-24 (1997); *cf. People v. Hufstedler*, 289 Ill. App. 3d 438, 443-44, 683 N.E.2d 471, 474 (1997); *People v. Smith*, 288 Ill. App. 3d 308, 312-13, 680 N.E.2d 490, 494 (1997); *People v. Sanders*, 286 Ill. App. 3d 1042, 1045, 678 N.E.2d 86, 88-89 (1997) (Holdridge, J., specially concurring). However, where a defendant asserts in the trial court more than a general claim that his sentence is excessive, he is allowed to raise that issue by a motion to reconsider sentence. *Catron*, 285 Ill. App. 3d at 37-38, 674 N.E.2d at 142. For example, if the defendant in *Catron* would have argued in the trial court that the court gave him the maximum sentence based upon improper consideration of a factor inherent in the crime, defendant could have complained that his agreement had not been complied with and he would not have been precluded from making a motion to reconsider his sentence. *Catron*, 285 Ill. App. 3d at 37-38, 674 N.E.2d at 142.

■ The State also argues that because defendant in his motion to reconsider sentence did not raise any specific claims outside of a general excessive-sentence claim, he has waived any specific arguments of trial court error he makes on appeal. Rule 604(d) provides that issues are waived on appeal if they were not raised in the motion to reconsider sentence. 145 Ill. 2d R. 604(d); *Catron*, 285 Ill. App. 3d at 38, 674 N.E.2d at 142. We agree that *Evans* precludes defendant from pursuing several of his arguments, but disagree that he was foreclosed from pursuing others by filing a motion to reconsider. Since defendant made specific arguments in his motion to reconsider sentence, he has met the Rule 604(d) requirements and is not precluded from raising those same issues on appeal.

In his motion to reconsider sentence, defendant raised two specific allegations of error, which he also raises on this appeal. In his motion to reconsider, defendant argued:

"1. The sentence imposed on the Defendant in the amount of 70 years was disproportionate to the nature of the offense and the history, character, and condition of the Defendant.

2. The Court's sentence was excessive in light of the Defendant's age, lack of criminal history, and condition at the time of the offense.

3. The Court's sentence failed to take into consideration the

rehabilitative potential of the Defendant, and the statutory factors in mitigation.

4. The Court's sentence incorrectly included an extended term, based upon the circumstances surrounding the offense, the criminal conduct of the victim and the Defendant's condition."

Defendant's first two arguments are general excessive-sentence arguments, which, consistent with *Evans*, will not be addressed on appeal because defendant did not move to vacate his guilty plea in the trial court. However, the final two arguments (certainly the final argument) are specific allegations of trial court error, so that defendant can proceed on appeal with the last argument and may be able to proceed with the third—if the record demonstrates the error of which he complains—even though he did not seek to withdraw his guilty plea.

■ Supreme Court Rule 615(b)(4) provides that an appellate court can reduce a sentence imposed by a trial court. 134 Ill. 2d R. 615(b)(4). However, a court's power to reduce a sentence is limited to cases where the trial court abused its discretion in sentencing the defendant. *People v. Streit*, 142 Ill. 2d 13, 19, 566 N.E.2d 1351, 1353, (1991). The trial court is in the best position to create a sentence that balances the need to protect society with the rehabilitation of the defendant because it can best assess defendant's credibility, character, demeanor, mentality, habits, and age, as well as prior criminal history, rehabilitative potential, the seriousness of the offense, the need to protect society, and the need to deter others. *People v. Smith*, 214 Ill. App. 3d 327, 338-39, 574 N.E.2d 784, 792 (1991).

Defendant first argues his sentence should be reduced because the trial court did not properly consider the mitigating factors presented to it, including his rehabilitative potential and his drug and alcohol abuse. See *People v. Brown*, 243 Ill. App. 3d 170, 176, 612 N.E.2d 14, 19 (1993) (first district: court reduced defendant's sentence for murder from 45 to 30 years where defendant was 20 years old, lacked any prior criminal history, and trial court failed to adequately consider his rehabilitative potential); *People v. Maldonado*, 240 Ill. App. 3d 470, 484-86, 608 N.E.2d 499, 509-10 (1992) (first district: court reduced defendant's sentence for murder from 40 to 20 years where defendant was 20 years old at the time of the offense, the father of two children, was engaged to the children's mother, had completed three years of high school, and had no prior felony convictions); *People v. Bigham*, 226 Ill. App. 3d 1041, 1049, 590 N.E.2d 115, 121 (1992) (fifth district: court vacated defendant's 60-year sentence for murder and remanded for new sentencing hearing where defendant had only one prior nonviolent offense, successfully completed proba-

tion, and had rehabilitative potential that would not be served by the length of his sentence).

When mitigating factors are presented to the court, there is a presumption that the trial court considered them, absent some contrary evidence. *People v. Labosette*, 236 Ill. App. 3d 846, 862, 602 N.E.2d 966, 977 (1992). The existence of mitigating factors does not obligate the trial court to reduce a sentence from the maximum sentence allowed. *Smith*, 214 Ill. App. 3d at 339, 574 N.E.2d at 792-93. Contrary to defendant's assertion, drug addiction may be considered an aggravating factor and the trial court does not abuse its discretion if it concludes that a drug addiction does not entitle defendant to lenient treatment. *People v. Shatner*, 174 Ill. 2d 133, 160, 673 N.E.2d 258, 270 (1996).

■ At the sentencing hearing, the court stated,

"I have considered evidence presented at the sentencing hearing, the pre-sentence report *and the factors in* aggravation and *mitigation, and I'm trying to balance that against the other things the statute requires us to look at.*
* * *

I would also indicate that it seems to me the alcoholism or drug use, or [a] combination thereof can be considered an aggravating factor where the Court is justified the Defendant's substance abuse made him accepted [*sic*]. Society, the public[,] needs protection, especially when the Defendant admits his failure in coping with the problem. *** It can be a mitigating factor and can be an aggravating factor.
* * *

We have considered the fact that he has no prior felony records. As a matter of fact, only a misdemeanor supervision. In any event, not one involving violence in taking consideration of his age." (Emphasis added.)

We conclude that the trial court properly considered the factors in mitigation and defendant has pointed to nothing in the record rebutting the presumption that the trial court considered those factors. Consequently, this is the type of argument that is foreclosed absent a motion to withdraw guilty plea. Moreover, were we to reach the merits, we would conclude the trial court did not abuse its discretion in sentencing defendant to 70 years' incarceration.

Defendant next argues that the trial court's imposition of an extended term was an abuse of discretion. Defendant contends that the circumstances surrounding the murder were not exceptionally brutal or heinous so as to justify the imposition of an extended-term sentence.

■ Section 5—5—3.2(b)(2) of the Unified Code of Corrections (Code)

provides that a court may impose an extended-term sentence "[w]hen a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." 730 ILCS 5/5—5—3.2(b)(2) (West 1994). Defendant directs our attention to *People v. Andrews*, 132 Ill. 2d 451, 466, 548 N.E.2d 1025, 1032 (1989). The State directs our attention to *People v. Champs*, 273 Ill. App. 3d 502, 510, 652 N.E.2d 1184, 1191 (1995).

In *Andrews*, defendant entered a car, which was stopped for a traffic signal, and pointed a gun at the passenger and driver. After the driver told defendant he would give defendant anything he wanted, defendant shot the driver in the head, killing him. Defendant then struck the passenger with the gun, told her to give him her money, and exited the vehicle. *Andrews*, 132 Ill. 2d at 454, 548 N.E.2d at 1026. The supreme court found the trial court abused its discretion in finding that "the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(b)(2). The supreme court first noted that such behavior is not limited to murders involving torture or the infliction of unnecessary pain, citing *People v. La Pointe*, 88 Ill. 2d 482, 501, 431 N.E.2d 344, 353 (1981); *cf. People v. Lucas*, 132 Ill. 2d 399, 445, 548 N.E.2d 1003, 1022-23 (1989), a death penalty case ("Cases in which this court has found brutal or heinous behavior to be present have generally involved prolonged pain, torture or premeditation"). The court went on to say that while every murder "is by nature unnecessary," and "[all] are brutal and heinous to a certain degree," and many victims are defenseless, section 5—5—3.2(b)(2) requires that the murder be "exceptionally" brutal or heinous and was not intended to convert every offense into an extraordinary offense subject to an extended-term sentence. *Andrews*, 132 Ill. 2d at 464-66, 548 N.E.2d at 1031-32. The court noted defendant did not have a history of violent crime, there was no evidence defendant indicated prior to the crime (either in the form of premeditation or taunting) that he intended to kill the victim or that defendant exhibited a callous attitude and complete lack of remorse following the murder. *Andrews*, 132 Ill. 2d at 466, 548 N.E.2d at 1032.

In *Champs*, which did not cite *Andrews*, defendant robbed some drug dealers, hit two of the drug dealers in the head with his weapon, lined them up twice, forced them to their knees, told them that they were all going to be killed and, when the victim attempted to run, defendant shot him in the neck and back. *Champs*, 273 Ill. App. 3d at 510, 652 N.E.2d at 1191. The court affirmed the extended-term sentence, stating that behavior is exceptionally brutal and heinous

when the shooting is systematic, unprovoked, continues after the victim has been struck, and lacks any logical reason, citing *People v. Burrell*, 228 Ill. App. 3d 133, 147, 592 N.E.2d 453, 463 (1992). The court noted that the victims were unarmed and defenseless, and defendant later showed no remorse, refusing to speak prior to sentencing and being uncooperative with his probation officer. *Champs*, 273 Ill. App. 3d at 510-11, 652 N.E.2d at 1191.

There is little evidence of premeditation in this case, at least not at first. Defendant went home and got his handgun and the pair then commenced driving about Danville looking for Butler, tricking him into entering the backseat under the guise of having more money to buy crack. While defendant drove Butler to a location outside of town, not following Butler's directions to the place the drugs were supposedly located, defendant may have originally intended to frighten Butler, not to kill him. There was no taunting of the victim, although the victim was threatened in an attempt to force him to come up with either the drugs or the money. However, since Butler undressed, he obviously was not brandishing a weapon. Butler begged for his life in the car after Dieu fired the first shot. Butler was shot three times, the first apparently by accident, the second apparently with the intent to kill him, and the third clearly with the intent to kill him. See *People v. Williams*, 285 Ill. App. 3d 394, 404, 673 N.E.2d 1169, 1175 (1996) (two shots, then two later shots, all to the head and neck). Focusing narrowly on the conduct during the commission of the offense, it might be said that such conduct "did not 'go beyond the mere infliction of death.' " *People v. Ratzke*, 253 Ill. App. 3d 1054, 1070, 625 N.E.2d 1004, 1016 (1993), quoting *People v. Anderson*, 201 Ill. App. 3d 75, 81, 559 N.E.2d 267, 271 (1990). Defendant had no history of violent crime and expressed remorse for his actions.

On the other hand, it does appear that certainly very quickly after the first shot struck Butler defendant formed the intent to kill Butler. Defendant stopped the car between two cornfields, Dieu gave defendant the gun, defendant told Butler to get out of the car, defendant shot Butler, who was having difficulty running away, and defendant fired the final shot from three to four feet away. The fact that unforeseen developments led defendant to conclude that it was necessary to commit murder does not prevent a characterization that the murder was brutal and heinous. A "cold-blooded execution" after a robbery, just to cover up the fact that the victim knew the defendant, can constitute exceptionally brutal or heinous behavior indicative of wanton cruelty. *People v. Fauntleroy*, 224 Ill. App. 3d 140, 153, 586 N.E.2d 292, 300 (1991). We reject the argument that once Butler had been shot it was "logical" for defendant to kill Butler and that he did

so in the least brutal way possible considering the circumstances. We reject the argument that defendant did nothing "beyond the mere infliction of death" or that this violence may not have been "wholly gratuitous." See *Ratzke*, 253 Ill. App. 3d at 1071, 625 N.E.2d at 1016. In the circumstances of this case there may have been no way to accomplish murder other than by exceptionally brutal and heinous conduct. We cannot say the trial court abused its discretion in imposing an extended sentence.

■ Defendant also argues that the trial court improperly used the same factors to find both an aggravating factor to impose a sentence above the minimum under section 5—5—3.2(a) of the Code as well as to impose an extended term under section 5—5—3.2(b) of the Code, which constituted improper double enhancement. 730 ILCS 5/5—5—3.2(a), (b) (West 1994). Defendant, however, did not raise this double enhancement argument in his motion to reconsider sentence; therefore, defendant has waived this argument on appeal (145 Ill. 2d R. 604(d)), and we will not address it. *People v. Salgado*, 287 Ill. App. 3d 432, 448, 678 N.E.2d 648, 660 (1997).

For the foregoing reasons, we affirm the trial court's imposition of a 70-year extended-term sentence.

Affirmed.

GREEN and STEIGMANN, JJ., concur.