# Illinois Official Reports

## Appellate Court

---

### *People v. Ramirez*, 2018 IL App (1st) 152125

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. OSCAR RAMIREZ, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-15-2125 |
| Filed | August 27, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CR-743; the Hon. Arthur F. Hill Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Daniel T. Mallon, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Kathryn A. Schierl, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Presiding Justice Pierce and Justice Walker concurred in the judgment and opinion. |

**OPINION**

¶ 1 Defendant Oscar Ramirez pled guilty to one count of aggravated unlawful use of a weapon (AUUW) and was sentenced to one year in prison. He filed a motion to withdraw his guilty plea and vacate the judgment because he was not told of the immigration consequences of that plea. The trial court denied Mr. Ramirez's motion. We affirm the decision of the trial court.

¶ 2 I. BACKGROUND

¶ 3 On December 28, 2014, Chicago police officers observed Mr. Ramirez riding his bicycle on a sidewalk on 26th Street. They stopped him to issue a city ordinance violation and noticed a large bulge in his right pants pocket. The officers asked Mr. Ramirez whether he had any dangerous weapons on him, and Mr. Ramirez responded that he had a gun. The officers searched Mr. Ramirez, recovered a fully loaded .22-caliber revolver and a small amount of what appeared to be cannabis, and placed Mr. Ramirez in custody.

¶ 4 Mr. Ramirez was charged with six counts of AUUW, which is a felony. 720 ILCS 5/24-1.6(d) (West 2014). A hearing was held, pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012), to discuss a guilty plea. At that hearing, Mr. Ramirez agreed to plead guilty to a single count of AUUW (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2014)) in exchange for the one-year prison sentence proposed by the trial court. The court gave Mr. Ramirez sentencing admonishments, but did not mention any possible immigration consequences. The court accepted Mr. Ramirez's plea and sentenced him to one year in prison.

¶ 5 Mr. Ramirez timely filed a motion to withdraw his guilty plea and vacate the judgment, on the basis that he was not told of the immigration consequences of his plea. At a preliminary hearing on the motion, the trial court acknowledged that it had not given Mr. Ramirez its usual admonishment regarding possible immigration consequences for noncitizens. The trial court pointed out that what it referred to as an "arrest report" in the court file stated that Mr. Ramirez's place of birth was Illinois, and it was the court's practice, when considering a guilty plea, to look at the place of birth on the defendant's arrest report.

¶ 6 At the hearing on the motion to withdraw his guilty plea, Mr. Ramirez testified that he was born in Mexico, came to the United States as a 3-year-old child, and was not a United States citizen. He did not know that pleading guilty to AUUW would have adverse immigration consequences, *i.e.*, that he would likely be deported as a result of the felony conviction. According to Mr. Ramirez, the public defender representing him during the plea never informed him of these consequences. Mr. Ramirez claimed that his public defender asked him whether he was a United States citizen and he told her that he was not. He also testified that he never told the police that he was born in Illinois. Mr. Ramirez asserted that if he had known that the plea would result in his deportation, he would not have pled guilty, and he thought he had a good chance of winning at trial. Mr. Ramirez acknowledged, at the hearing to withdraw his plea, that a pretrial motion to reduce his bond, filed by the public defender's office, stated that he was a "life-long" resident of Cook County, but asserted that he had never told any attorney he was born in Illinois.

¶ 7 Mr. Ramirez's former assistant public defender testified that, although she had filed the motion to reduce bond she did not author it, as such motions are routinely prepared by the bond court division of the public defender's office. The assistant public defender also testified that,

as a part of discovery in Mr. Ramirez's case, she had received a copy of a "Chicago Police Department criminal history report," which reflected that Mr. Ramirez was born in Illinois. The assistant public defender testified that, based on the information in the motion to reduce bond and the criminal history report, she did not have any conversation with Mr. Ramirez regarding his immigration status. She never asked Mr. Ramirez if he was a United States citizen, and he never told her that he was not. She acknowledged that she had not gone through the criminal history report in detail with Mr. Ramirez.

¶ 8    The motion to reduce bond referenced in Mr. Ramirez's motion to vacate his guilty plea is part of the record on appeal and states that Mr. Ramirez "represents that he is nineteen (19) years old, he is a lifelong resident of Cook County, and has lived at the same address for the last four years with his mother and sister." The arrest report referenced by the trial court, which appears to be the same document as the criminal history report shown to Mr. Ramirez's former counsel at the hearing on his motion to withdraw the guilty plea, does not appear to be in the record. No one from the bond division of the public defender's office or from the Chicago Police Department testified as to where the information regarding Mr. Ramirez's place of birth in the bond motion or the arrest report came from.

¶ 9    The trial court denied Mr. Ramirez's motion to withdraw his guilty plea and vacate the judgment against him. Noting the conflicting testimony regarding whether Mr. Ramirez's assigned assistant public defender asked him if he was a United States citizen, the trial court stated that it did not believe Mr. Ramirez's testimony that such a conversation happened "at all." The court concluded that, based on the information presented to her, the assistant public defender had no reason to ask Mr. Ramirez whether he was a citizen. The court stated it did not believe that *Padilla v. Kentucky*, 559 U.S. 356, 367 (2010), and its progeny place a "prophylactic duty" on a defense attorney to inquire as to a client's immigration status.

¶ 10    The trial court subsequently denied Mr. Ramirez's motion to reconsider, to which he had attached his Mexican birth certificate. The court recited the factual basis for the plea, noted the contradictory testimony regarding the conversation in which Mr. Ramirez claimed that he had told defense counsel that he was not a United States citizen and reiterated that Mr. Ramirez was not credible on this issue. The trial court did not reach the question of whether Mr. Ramirez was prejudiced in any way by the fact that he did not receive an immigration admonishment.

## II. JURISDICTION

¶ 11

¶ 12    Mr. Ramirez's motion to reconsider was denied on June 25, 2015, and Mr. Ramirez timely filed his notice of appeal that same day. This court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 and 606, governing appeals from final judgments of conviction in criminal cases (Ill. S. Ct. Rs. 603, 606 (eff. Feb. 6, 2013)).

## III. ANALYSIS

¶ 13

¶ 14    On appeal, Mr. Ramirez argues that the trial court erred in denying his motion to withdraw his guilty plea. His claim is that his trial counsel provided ineffective assistance of counsel by failing to inform him of the potential deportation consequences of his guilty plea, rendering the plea involuntary. Mr. Ramirez claims that had counsel properly advised him regarding the immigration consequences of such a plea—that it would result in his ineligibility to participate in the Deferred Action for Childhood Arrivals program (DACA), "his only path to legally

remaining in the United States"—he would not have pled guilty. Mr. Ramirez points out, and the State does not dispute, that DACA bars those with felony convictions from participation. See Memorandum from Janet Napolitano, Secretary of Homeland Security, to David V. Aguilar et al. (June 15, 2012), https://www.dhs.gov/sites/default/files/publications/s1-exercising-prosecutorial-discretion-individuals-who-came-to-us-as-children.pdf ("Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children"). It is also undisputed that the trial court failed to admonish Mr. Ramirez regarding the possible immigration consequences of a guilty plea, which the court is required to do in all cases under section 113-8 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-8 (West 2014)).

¶ 15    A request to vacate a guilty plea based on an attorney's failure to correctly advise a criminal defendant of the immigration consequences is analyzed under the two-part test established by the United States Supreme Court for claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). *Padilla*, 559 U.S. at 364-365. Under *Strickland*, a defendant must establish that (1) trial counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) the defendant was prejudiced by trial counsel's deficient performance, in that there is a reasonable probability that, but for the deficiency, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687. Because a defendant must satisfy both prongs of the *Strickland* test to prevail on a claim of ineffective assistance of counsel, if we find that counsel's performance was not deficient we need not reach the issue of prejudice. *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998).

¶ 16    We consider all of the circumstances to determine whether counsel was deficient, and our review of counsel's performance "must be highly deferential." *Strickland*, 466 U.S. at 688-89. A fair assessment requires us to eliminate the "distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Additionally, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688.

¶ 17    Mr. Ramirez argues that his public defender's performance here was deficient because she failed to provide him with even a "general warning of the possibility of immigration consequences." The Supreme Court in *Padilla* found that where counsel told his client that he did not have to worry about his immigration status because he had been in the country for so long (more than 40 years), when in fact the drug charges he pled guilty to made his deportation virtually mandatory, counsel's performance was not "constitutionally competent." *Padilla*, 559 U.S. at 360. The Court noted that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id.* at 367.

¶ 18    In *People v. Valdez*, 2016 IL 119860, our supreme court applied *Padilla* in the context of a guilty plea to burglary, holding that the failure to inform the defendant, even in a general sense, that his plea "may have" immigration consequences also constituted deficient performance. Our supreme court distinguished between the situation in *Padilla*, where the immigration consequences of the plea to a drug crime were "succinct, clear, and explicit," and the situation before the court in *Valdez*, where there was a possibility but not a certainty of deportation. (Internal quotation marks omitted.) *Id.* ¶ 20. There, because the immigration consequences were not spelled out by statute, counsel's only obligation was to give the defendant a "general warning of the possibility of immigration consequences." *Id.* ¶ 26.

¶ 19 Our supreme court recognized in *Valdez*, 2016 IL 119660, ¶¶ 30-32, that this kind of general warning is also what is mandated by section 113-8 of the Code. That section provides:

"Advisement concerning status as an alien.

Before the acceptance of a plea of guilty, guilty but mentally ill, or *nolo contendere* to a misdemeanor or felony offense, the court shall give the following advisement to the defendant in open court:

'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.' " 725 ILCS 5/113-8 (West 2014).

¶ 20 We note that section 113-8 requires this admonition in *all* cases. And, when it is given, our supreme court has held that it serves to eliminate any prejudice from counsel's failure to discuss immigration consequences with their clients in *Valdez*-type cases, where there is a possibility, but no clear certainty, of those consequences occurring. *Valdez*, 2016 IL 119860, ¶¶ 30-32. Therefore, adherence to the statute will often eliminate the kind of claim Mr. Ramirez makes in this case. But here it is undisputed that Mr. Ramirez received neither a specific nor a general warning about possible immigration consequences and that the trial court failed to follow the statutory mandate of section 113-8.

¶ 21 The State argues that trial counsel in both *Valdez* and *Padilla* knew their respective clients were not United States citizens. In *Padilla*, 559 U.S. at 359, the defendant had explicitly asked his counsel about immigration consequences, and in *Valdez*, defense counsel told the trial court that Immigrations and Customs Enforcement had a "hold" on his client (see *People v. Valdez*, 2015 IL App (3d) 120892, ¶¶ 1, 3, *rev'd*, 2016 IL 119860).

¶ 22 Mr. Ramirez points to *People v. Deltoro*, 2015 IL App (3d) 130381, in which the Third District found that the Supreme Court's analysis in *Padilla* applied in a postconviction petition that did not allege that counsel had any knowledge of the defendant's immigration status. The *Deltoro* court noted that "*Padilla* does not expressly require a criminal defendant to take the initiative to inform his attorney of his immigration status in order to trigger the attorney's duty to inform the client whether his plea carries a risk of deportation." *Id.* ¶ 17. The *Deltoro* court recognized that such a requirement would " 'undermine' " the holding of *Padilla* by leading to the " 'absurd result' " that only defendants who understand that criminal convictions can impact immigration status will be warned of that possibility. *Id.* (quoting *People v. Picca*, 97 A.D.3d 170, 179 (N.Y. App. Div. 2012)).

¶ 23 The State responds that in this case, defense counsel did not simply lack knowledge of Mr. Ramirez's immigration status. Rather, there were actual documents (*i.e.*, the motion to reduce bond and the arrest report) that said Mr. Ramirez was a "life-long resident of Cook County" and born in Illinois. We agree with the State. We accept the premise in *Deltoro* that a defendant should not necessarily be burdened to make his lawyer aware of his immigration status. But in cases such as this one, where there was objective documentation that would inform defense counsel that her client was a citizen of the United States, and no information to the contrary, we cannot say that counsel acted unreasonably in failing to advise her client of the possible immigration consequences of a guilty plea.

¶ 24 Mr. Ramirez points to cases in which courts have found that counsel's reliance on police reports, or the failure to discuss the police reports with the defendant, was unreasonable

assistance. *Campbell v. Reardon*, 780 F.3d 752, 767 (7th Cir. 2015); *People v. Smith*, 268 Ill. App. 3d 574, 579 (1994). However, those cases are fact specific and not persuasive here. In *Campbell*, the lawyer failed to interview one of very few eyewitnesses based on a statement in a police report that "Christmas lights obscured her view of the beating and she did not know any of the men involved," when in fact that witness would have testified that she knew the defendant and that he was not involved. In *Smith*, the defendant's attorney subpoenaed police reports at the defendant's request but then never shared them with the defendant, which the court found was a failure on the part of counsel to keep his client "informed of developments in the case." Neither of these cases stands for the proposition that everything in a police report must be part of an attorney-client discussion. Moreover, the attorney in this case also relied on a document prepared by her own office that said that Mr. Ramirez was a "life-long" resident of Cook County. We simply cannot say that such reliance "fell below an objective standard of reasonableness" under *Strickland*, 466 U.S. at 687-88.

¶ 25 In short, Mr. Ramirez has not satisfied the first prong of the *Strickland* test. He has not shown that his counsel was deficient for failing to advise him of the possible immigration consequences before he pled guilty to a felony conviction. Therefore, we agree with the trial court that we do not need to consider whether he was prejudiced by counsel's action, and we find no abuse of discretion in the trial court's refusal to vacate Mr. Ramirez's guilty plea.

¶ 26 IV. CONCLUSION

¶ 27 For the foregoing reasons, judgment of the trial court is affirmed.

¶ 28 Affirmed.