NOTICE

Decision filed 08/09/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220587-U

NO. 5-22-0587

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 21-CF-651 |
| | ) | |
| JOHN R. PETMECKY, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Cates and Justice Moore concurred in the judgment.

**ORDER**

¶ 1   *Held*:  We affirm defendant's sentence and conviction, where defendant waived the issue of the defective information by entering an open plea of guilty; counsel was not deficient for failing to file a motion to dismiss based on a pending supreme court case in *People v. Kidd*; counsel's decision not to raise a *Kidd*-style argument in the motion to reconsider sentence did not refute the facially valid Rule 604(d) certificate; the trial court did not err at sentencing by relying on the lead detective's testimony or improper factors; and the court's sentence was not excessive.

¶ 2   Defendant, John R. Petmecky, appeals the Champaign County circuit court's orders sentencing defendant and denying his motion to reconsider sentence. Defendant argues on appeal that the information failed to allege all elements of the offense of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2020)), which hindered his ability to properly prepare a defense. As such, defendant argues that the interests of justice, pursuant to *People v. Belcher*, 199 Ill. 2d 378 (2002), require this court to remand defendant's case to allow him to file a motion

1

to withdraw his guilty plea based on intervening precedent set forth by the Illinois Supreme Court in *People v. Kidd*, 2022 IL 127904, during the pendency of defendant's appeal. In addition, defendant argues that the trial court erred at sentencing by (1) relying on uncorroborated, multi-level hearsay testimony, (2) punishing defendant for the financial burden of his incarceration, (3) relying on improper statements contained in the victim impact statements, and (4) relying on the State's unsupported speculation that defendant was a lifelong sexual predator. Lastly, defendant contends that the court imposed an excessive sentence. For the following reasons, we affirm.

¶ 3                                              I. Background

¶ 4     We limit our recitation to those facts relevant to our disposition of this appeal. We will recite additional facts in the analysis section as needed to address defendant's specific arguments.

¶ 5     On June 9, 2021, the State charged defendant by information with four counts of predatory criminal sexual assault of a child (counts I-IV) (720 ILCS 5/11-1.40(a)(1) (West 2020)), Class X felonies, and two counts of aggravated criminal sexual abuse (counts V, VI) (*id.* § 11-1.60(b)), Class 2 felonies. The State alleged that on or about January 1, 2018, through December 1, 2020, defendant, who was 17 years of age or older, committed an act of contact, however slight, between the sex organ of defendant and the breast (count I), mouth (count II), hand (count III), and vagina (IV) of the victim, J.P.,[1] who was under 13 years of age at the time the act was committed.

¶ 6     Next, with regard to the two counts of aggravated criminal sexual abuse, the State alleged that defendant committed an act of sexual conduct with J.P., who was under 18 years of age at the time the act was committed and a family member of defendant, when defendant intentionally placed his penis on her buttocks (count V) for the purpose of defendant's sexual arousal, and with

---

[1]The names of the two minors in the information contained in the common record on appeal have been redacted.

A.P., who was under 18 years of age at the time the act was committed and a family member of defendant, when defendant touched her breasts (count VI) for the purpose of defendant's sexual arousal.

¶ 7 On June 9, 2021, defendant, represented by trial counsel, filed a motion for appointment of a psychiatrist to determine defendant's fitness to stand trial, which the trial court granted. The court appointed Dr. Lawrence Jeckel to evaluate and determine defendant's fitness.

¶ 8 On July 19, 2021, the trial court held a fitness hearing. After reviewing Dr. Jeckel's report, which was filed that day, the court found defendant unfit to plead or stand trial and ordered him to the custody of the Illinois Department of Human Services (IDHS). Specifically, Dr. Jeckel opined that defendant fulfilled the criteria for the mental conditions of major depressive disorder, recurrent episode, severe, with psychotic features. Dr. Jeckel detailed a prolonged period of defendant experiencing hallucinations and displaying highly unusual behavior, such as hearing voices, lying naked on the ground, and "putting peanut butter between his butt cheeks." Dr. Jeckel's report also noted that Detective Matthew Bross of the Rantoul Police Department interviewed defendant following defendant's arrest. During the interview, defendant told Detective Bross that Satan haunted him since December 2020, and he felt God intervene the morning he told his wife, Tracy Petmecky, that he sexually abused J.P. and A.P. Due to his psychosis, Dr. Jeckel opined that defendant could not understand the nature and purpose of the proceedings against him or assist his attorney in preparing his case. Dr. Jeckel did not issue an opinion regarding the issue of defendant's sanity.

¶ 9 On November 8, 2021, the trial court held a status hearing. Following the hearing, the court found defendant unfit to plead or stand trial. The court ordered defendant to remain in the custody of the IDHS.

¶ 10    On January 3, 2022, the trial court held a fitness hearing concerning a December 2021 report filed by defendant's treatment team finding defendant fit to stand trial following the proper administration of medication. Following the hearing, the court entered a written order finding defendant fit to stand trial, plead, or be sentenced. The court appointed defendant counsel. Defendant then waived his right to a preliminary hearing, entered a plea of not guilty, and requested a jury trial.

¶ 11    On May 19, 2022, defendant entered an open plea of guilty to count I. The trial court read count I of the information and the nature of the charge against defendant.[2] Defendant understood. The trial court admonished defendant that, in exchange for his guilty plea, the State would dismiss the remaining five counts against him. Defendant understood. In addition, the court admonished defendant that, in exchange for his guilty plea, he agreed to a sentencing range between 6 to 60 years in prison, served at 85%, followed by 3 years to natural life of mandatory supervised release. Defendant understood. The court, again, admonished defendant of the possible sentencing range. Defendant understood. Defendant stated that he voluntarily, knowingly, and under no threat of force pled guilty to count I. The State presented its factual basis.

¶ 12    The State's evidence would reveal that police dispatched to defendant's residence on June 7, 2021, after defendant self-reported sexually abusing his daughters. When police arrived, defendant's 15-year-old daughter, A.P., ran out of the home hysterically crying. Upon entering defendant's home, defendant's wife informed police that defendant confessed earlier that day to molesting A.P. and J.P., the couple's 13-year-old daughter. Defendant's wife informed police that J.P. "had *** gotten the worst of it."

---

[2]The trial court read the following: "[O]n or about January 1st, 2018, through December 1st, 2020, in Champaign County[,] you committed the offense of predatory criminal sexual assault of a child in that you, who is 17 years of age or older, committed an act of contact however slight between the breast of the victim and the sex organ of you and the victim being under 13 years of age when the act was committed."

¶ 13    After defendant's arrest, Mary Tewell, a trained forensic interviewer at the Children's Advocacy Center (CAC), interviewed A.P. and J.P. separately, while Officer James Schmidt of the Rantoul Police Department observed. J.P., who was between the ages of 9 and 11 at the time of the alleged abuse, disclosed that defendant first "touch[ed] her" one to two years prior. Initially, she declined defendant's advancements. J.P., however, "g[a]ve in and let her dad touch her" because "defendant would feel sad and depressed" when she declined. J.P. told Tewell that defendant touched her breasts with his hands, penis, and mouth. Defendant also touched J.P.'s buttocks with his penis and her vagina with his mouth. Defendant also forced her to touch his penis with her hand and mouth.

¶ 14    Following the State's factual basis, defendant pled guilty to count I. The trial court fully admonished defendant in accordance with Illinois Supreme Court Rule 402 (eff. July 1, 2012). After determining that a factual basis for the plea existed and defendant voluntarily and knowingly entered the plea, the court accepted defendant's plea of guilt and entered an order to that effect.

¶ 15    On July 5, 2021, the trial court held defendant's sentencing hearing. The State called Detective Matthew Bross to testify as to evidence in aggravation. Detective Bross, lead detective on defendant's case, testified that police responded to defendant's home on June 7, 2021, after defendant confessed to his wife and then self-reported sexually abusing his daughters. When police arrived, they witnessed A.P. hysterically crying while running from the home. Inside the home, police encountered Tracy, who was crying and packing a bag, and defendant, who informed police that he confessed to his wife earlier in the day. Police transported A.P. and J.P. to the CAC for forensic interviews.[3]

---

[3]The record on appeal does not contain either recorded forensic interview.

5

¶ 16 Detective Bross testified that he watched A.P. and J.P.'s recorded CAC interviews. Detective Bross first testified to the content of J.P.'s recorded interview. J.P. informed Tewell that defendant first touched her "upper thigh and waistline area" when she was 10 years old. Initially, J.P. denied defendant's requests to touch him, which prompted defendant to become "depressed and angry at family members." To make defendant "less depressed and *** less angry at the house," J.P. finally allowed defendant to touch her. Initially, defendant touched J.P. monthly. J.P. recalled a situation when defendant looked at her breasts. Later that evening, defendant lay in bed with J.P. and masturbated. Sometime later, defendant asked J.P. to perform oral sex on him. Initially, J.P. said no. She later "g[a]ve in," reporting that she performed oral sex on defendant once a week to once every two weeks after that. Defendant also masturbated on J.P.'s breasts on several occasions and made her watch pornography with him. J.P. informed Tewell that Tracy became suspicious at some point, which prompted defendant to stop abusing J.P. several months before defendant confessed.

¶ 17 Detective Bross then testified to the content of A.P.'s recorded interview. A.P. informed Tewell that defendant touched her for the first time in fifth grade. Defendant first "rubbed [her] upper thigh waistline area." Defendant also rubbed under and on her breasts. After defendant touched A.P.'s breasts for the first time, the two verbally fought. After the fight, A.P. apologized to defendant, and defendant told A.P. that he trusted her. Defendant then fondled A.P.'s breasts. Defendant instructed A.P. to keep defendant's actions a secret or it "would ruin the family." Detective Bross testified that A.P. cried during the interview, explaining that she believed defendant pursued her younger sister because A.P. denied his advancements.

¶ 18    Next, Detective Bross testified to the content of defendant's interview following his arrest.[4] Defendant admitted to Detective Bross that he forced J.P. to perform oral sex on him and also performed oral sex on her, which happened every other week but sometimes more frequently. Defendant admitted that he touched J.P.'s vagina and both daughters' breasts. Defendant also touched J.P. more often than A.P., because A.P. seemed uncomfortable and he feared A.P. would tell someone. Defendant admitted that he touched his own mother when he was four years old and also touched his five-year-old cousin when he was in eighth grade.

¶ 19    Following Detective Bross's testimony, trial counsel presented evidence in mitigation, including letters from Reverend Robert Freeman, Terry Bunting, a fellow businessman, Stephen Petmecky, defendant's brother, and Barbara Petmecky, defendant's mother. The court read the letters in mitigation, without objection by the State, and indicated on the record that it would consider the letters as mitigation evidence.

¶ 20    Next, the State acknowledged that mitigation evidence existed, including defendant's lack of criminal history and successful business. The State also noted that defendant, himself, contacted police to report his crimes. As a result, the State agreed to dismiss five additional counts against defendant. The State argued, however, that "staggering" evidence in aggravation existed, including "everything" contained in Detective Bross's testimony. The State argued that defendant's daughters felt unsafe in their own home. The State also highlighted defendant's confession to police that he touched his mother and younger cousin in a sexual manner as a child. The State indicated that defendant's behavior "has been going on his entire life, and again these are only the victims that he has admitted to. Who knows if there's other victims."[5] The State requested the

---

[4]The record on appeal does not contain defendant's interrogation interview.
[5]The State's argument indicated that defendant's mother was the victim, not defendant, although defendant was a minor when he allegedly touched his mother in a sexual manner.

court consider A.P., J.P., and Tracy's victim impact statements. The State requested the court sentence defendant to 48 years in prison.

¶ 21    In response, trial counsel argued that defendant, who was 39 years old at the time of sentencing, had no criminal record, aside from traffic citations and illegal consumption, and operated his own business. Trial counsel stated the following:

"I understand there's not a lot of mitigation when it comes to cases of this nature, and the State has addressed some of *** that mitigation. I think one of the most telling things is that [defendant] did call. He did turn himself in. He did report himself to the police. *** [B]efore he reported he did stop the behavior he was exhibiting with his children. He did turn himself in. He did give a full confession as to what had happened."

Trial counsel also noted that defendant took responsibility and continued to show remorse for his actions. As such, counsel requested the court sentence defendant to 15 to 20 years in prison.

¶ 22    Prior to receiving his sentence, defendant read his statement in allocution. After repeatedly apologizing for his actions, defendant stated that he experienced a psychotic depression in November 2019. In November 2020, he realized the gravity of his actions and attempted suicide for the next six months. Defendant self-reported his actions to "make things right" and "begin a journey [of] healing for [his] family." Defendant apologized "for the embarrassment self-reporting *** caused [his] family."

¶ 23    After considering the evidence presented, all factors in aggravation and mitigation, the presentence investigation report, all arguments by the parties, and "the seriousness of the offense with the objective of restoring the Defendant to useful citizenship," the trial court sentenced defendant to 30 years in prison. The court acknowledged that mitigation evidence existed, including defendant's "acceptance of responsibility and his remorse," defendant's lack of a serious

8

criminal history, that defendant owned a successful business, defendant's mental health issues, and multiple letters in support of defendant. The court stated the following:

> "[Defendant] was committing a crime for years against his daughters[,] and I'm not trying to minimize what happened, but at some point[,] he was realizing what he was doing was wrong and he was becoming depressed and perhaps even suicidal which all led to the date when he felt that he had to tell everybody what was going on and he turned himself in. And while at the jail and during the pendency of this case he did suffer from serious mental health issues. He had to get treatment, so I find the mental health component to be mitigating as well."

¶ 24 The trial court, however, found "significant aggravation" existed. The court found it necessary to send a message to deter defendant, who held a position of trust over his daughters, and others from committing crimes against female minors, particularly relatives, in the future. The court also addressed the victim impact statements, noting that J.P. suffered nightmares, flashbacks, attended therapy, and "felt trapped." A.P. suffered nightmares and attended therapy, and Tracy suffered financial issues after defendant's business closed. Tracy also indicated that defendant "emotionally murdered their daughters and the daughters ha[d] social anxiety." The court continued to state:

> "Of note Detective Bross indicated when talking about [J.P. that] she *** was saying no to [defendant's] requests and he got angry and depressed and in a way to make her dad feel better she was guilted into doing what he wanted, and I find that compelling. And with respect to [A.P.,] the specific request by the Defendant to tell her to keep this as a secret or it would ruin the family and the guilt that she has to live through because when she was saying no in her mind she feels like that's why the Defendant went to [J.P.] and

9

[J.P.] got the brunt of it, so to a great extent [A.P.] felt guilty [for] what happened to her younger sister. I find that aggravating as well."

The court sentenced defendant to 30 years in prison.

¶ 25    On July 18, 2022, defendant filed a timely motion to reconsider sentence. On August 22, 2022, trial counsel filed an Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) certificate of counsel. Defendant did not file a motion to withdraw guilty plea or refer to withdrawing his guilty plea in his motion to reconsider sentence. On September 7, 2022, the court denied defendant's motion to reconsider sentence following a hearing. Defendant filed a timely notice of appeal.

¶ 26                                II. Analysis

¶ 27                          A. Defective Information

¶ 28    We first address defendant's challenge to the information and whether this court should allow him to withdraw his guilty plea on remand.

¶ 29                    1. Intervening Precedent in *Kidd*

¶ 30    Defendant first argues that this court must remand defendant's predatory criminal sexual assault of a child conviction, where the information failed to allege all elements of the offense in count I, hindering his ability to properly prepare his defense. With reliance on *Kidd*, 2022 IL 127904, ¶ 20, defendant asserts that the Illinois Supreme Court clarified that the trial court could not convict him of predatory criminal sexual assault of a child because the information failed to allege a purpose of sexual gratification. Thus, pursuant to *Belcher*, 199 Ill. 2d 378, he requests this court allow him to file a motion to withdraw his guilty plea. Because the issue involves a question of law, our review is *de novo*. *Kidd*, 2022 IL 127904, ¶ 14 (citing *People v. Espinoza*, 2015 IL 118218, ¶ 15).

¶ 31    A defendant has a fundamental right, as set forth in section 111-3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/111-3 (West 2020)), to be informed of the nature and cause of criminal accusations made against him. *People v. Nash*, 173 Ill. 2d 423, 428-29 (1996). Section 111-3(a)(3) provides that the charging instrument must set forth the nature and elements of the offense charged. 725 ILCS 5/111-3(a)(3) (West 2020). Here, it is undisputed that count I of the information failed to specify whether defendant performed the alleged conduct "for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILCS 5/11-1.40(a)(1) (West 2020). Defendant, however, entered a voluntary open plea of guilty to count I in exchange for the State's dismissal of five counts. "It is well established that a voluntary guilty plea waives all nonjurisdictional errors or irregularities, including constitutional errors." *People v. Townsell*, 209 Ill. 2d 543, 545 (2004) (citing *People v. Peeples*, 155 Ill. 2d 422, 491 (1993)); see also *People v. Burton*, 184 Ill. 2d 1, 27 (1998); *People v. Mueller*, 2013 IL App (5th) 120566, ¶ 12.

> "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (defendant must show that counsel's advice not competent).

Thus, defendant waived this issue by entering his voluntary open plea of guilty.

¶ 32    Waiver aside, defendant's challenge to the information fails on the merits. Defendant argues that intervening precedent in *Kidd* allows him under *Belcher*, 199 Ill. 2d at 382, to seek remand to file a motion to withdraw his guilty plea in the interests of justice. Specifically, defendant argues that the supreme court's holding in *Kidd* "dispenses any doubt that the State failed to strictly comply with Illinois charging requirements in this case." Although our supreme court in *Kidd* determined the defendant's indictment defective, where it failed to allege that defendant acted for the purpose of sexual gratification, we find the facts of *Kidd* distinguishable to the case at issue. 2022 IL 127904, ¶ 30.

¶ 33    In *Kidd*, the defendant filed a *pro se* motion to dismiss the indictment during pretrial proceedings for insufficiently stating the elements of the charged offense. *Id.* ¶ 5. The court denied the defendant's motion. *Id.* Prior to trial, the State filed a motion to amend the indictment to allege that the defendant "made sexual contact 'for the purpose of the sexual gratification of the Defendant or victim.' " *Id.* ¶ 7. Defendant, represented by counsel, objected and moved to dismiss the indictment. *Id.* The court denied both the State's motion to amend and the defendant's motion to dismiss. *Id.* The court determined that the defendant "suffered no prejudice, as the indictment sufficiently informed him [that] the State would prove he made the contact [with the victim] for the purpose of sexual gratification." *Id.*

¶ 34    Although the defendant's case proceeded to trial on the original indictment, the trial court instructed the jury on each element of the offense of predatory criminal sexual assault of a child, which included the purpose of the sexual contact. *Id.* After the jury found defendant guilty on both counts, the defendant, again, raised in a posttrial motion the issue of the defective indictment, which the court denied. *Id.* ¶ 9. The defendant then argued the same issue before the appellate court, and the appellate court affirmed the defendant's convictions. *Id.* ¶ 11.

¶ 35    Our supreme court in *Kidd* determined that the indictment failed to allege all essential elements of the charged offense. *Id.* ¶ 30. In concluding that the trial court committed reversible error, the court relied on section 111-3 of the Code, requiring strict compliance with the pleading requirements of the Code when a defendant challenges the sufficiency of an indictment *before* trial in a pretrial motion. *Id.* ¶¶ 16, 26. The supreme court noted that the defendant's case did not encompass a "mere omission of an element from the charging instrument." *Id.* ¶ 25. Rather, both the trial court and the State incorrectly informed defendant, appearing *pro se* at the time, that the State could prove sexual contact for the offense of predatory criminal sexual assault of a child without proving the purpose of the contact. *Id.* Then, immediately before trial, the State made an oral motion to amend the indictment to include language that the defendant made sexual contact for the purpose of sexual gratification. *Id.* Although the court denied the State's motion to amend, the court later included the statutory language of purpose in the jury instructions. *Id.* Based on this, the supreme court determined that the "trial court forced [the defendant] to complete his preparation for trial without a clear statement of the charges on which the State intended to proceed." *Id.* ¶ 26.

¶ 36    Here, we are not faced with a scenario where defendant filed a pretrial motion attacking the information for insufficiency purposes and then proceeded to trial on the defective charging instrument. Rather, this court is faced with the sufficiency of an information attacked for the first time on appeal following a guilty plea. Count I of the information in this case reads:

"That on or about January 1, 2018 through December 1, 2020, in Champaign County, [defendant] committed the offense of predatory criminal sexual assault of a child *** in that the said defendant, who was 17 years of age or older, committed an act of contact, however slight[,] between the breast of [J.P.] and the sex organ of defendant, [J.P.] being

13

under 13 years of age when the act was committed *** [(720 ILCS 5/11-1.40(a)(1) (West 2020))]."

Although the information does not state the purpose of the sexual contact for the charge of predatory criminal sexual assault of a child, "the sufficiency of a complaint attacked for the first time on appeal must be determined by a different standard." *People v. Pujoue*, 61 Ill. 2d 335, 339 (1975). "When attacked for the first time on appeal [an information or indictment] is sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." *Id.*; see also *People v. Gilmore*, 63 Ill. 2d 23, 29 (1976) (citing *People v. Grant*, 57 Ill. 2d 264, 267 (1974); *People v. Harvey*, 53 Ill. 2d 585, 588 (1973)). In other words, the issue before this court is whether the defect in the information prejudiced defendant in preparing his defense. *People v. Thingvold*, 145 Ill. 2d 441, 448 (1991).

¶ 37    With these principles in mind, we conclude that strict compliance with the pleading requirements of the Code is inapplicable to our analysis because defendant did not attack the information before trial and he pled guilty. *Id.* (citing Ill. Rev. Stat. 1989, ch. 38, ¶ 111-3(a)); see also *People v. Smith*, 99 Ill. 2d 467, 474 (1984); *Gilmore*, 63 Ill. 2d at 29; *Pujoue*, 61 Ill. 2d at 339. As such, we do not consider whether the indictment could withstand a pretrial motion to dismiss (*People v. Rege*, 64 Ill. 2d 473, 478 (1976)), or if its form tracks the provision of section 111-3 (see *Gilmore*, 63 Ill. 2d at 29). We find the information, here, sufficiently informed defendant of the charge and would operate to bar a subsequent prosecution. The information alleged the charge in count I against defendant, included the victim,[6] the dates and county of the occurrence, defendant's name, and the statutory citation involved, as well as the factual details, including the

---

[6]The name of the minor victim, defendant's 13-year-old daughter, J.P., in count I of the information appears redacted in the common law record on appeal.

body part of the victim that made sexual contact with defendant's sex organ. We cannot conclude that the absence of the purpose of the sexual contact—for sexual gratification—prejudiced defendant in preparing his defense that ultimately led him to accept an open plea in exchange for the dismissal of five additional counts against him, especially where, as trial counsel stated at defendant's sentencing, defendant "g[a]ve a full confession as to what had happened" with both J.P. and A.P. following his arrest. We also find that the information is clearly sufficient to be pleaded in bar of another prosecution.

¶ 38    Accordingly, because defendant waived the issue of the defective information and we find *Kidd* distinguishable to the instant case, we decline to address defendant's reliance on *Belcher*, 199 Ill. 2d at 382-83 (our supreme court recognized an exception to Rule 604(d) and allowed the defendant to seek withdrawal of his guilty plea on remand due to a "misapprehension of law" because "the ends of justice w[ould] be better served" when the defendant pled guilty after his court-appointed psychiatrist found him fit to stand trial and sane at the time of the offense, based on an insanity statute later found unconstitutional), where defendant argues that this court should remand his case to file a motion to withdraw his guilty plea based on *Kidd*, even though defendant did not seek to withdraw the plea before the trial court.

¶ 39                                    2. Rule 604(d)

¶ 40    Next, defendant argues that trial counsel's failure to raise a *Kidd*-style argument refutes trial counsel's facially valid Rule 604(d) certificate. Defendant specifically contends that, "[a]lthough counsel did not yet have the benefit of *Kidd*, she should have known that *Kidd* was pending in the Illinois Supreme Court." We note that, although defendant does not argue that counsel was ineffective here, the State devotes argument to the effectiveness of trial counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). However, not every challenge to the sufficiency

15

of proceedings for compliance with Rule 604(d) necessitates the application of *Strickland.* See *People v. Tejada-Soto*, 2012 IL App (2d) 110188, ¶ 16.

¶ 41 Rule 604(d) sets forth the procedure to be followed when a defendant wishes to appeal from a judgment entered upon a guilty plea. *People v. Curtis*, 2021 IL App (4th) 190658, ¶ 29. The purpose of Rule 604(d) is to ensure that before a defendant appeals a guilty plea, the trial court is " 'given the opportunity to hear the allegations of improprieties that took place outside the official proceedings and *dehors* the record, but nevertheless were unwittingly given sanction in the courtroom.' " *In re H.L.*, 2015 IL 118529, ¶ 9 (quoting *People v. Wilk*, 124 Ill. 2d 93, 104 (1988)). Whether trial counsel complied with the requirements of Rule 604(d) is a legal question we review *de novo. People v. Gorss*, 2022 IL 126464, ¶ 10.

¶ 42 Rule 604(d) provides:

"(d) Appeal by Defendant From a Judgment Entered Upon a Plea of Guilty. No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court *** a motion to withdraw the plea of guilty and vacate the judgment.
***
The motion shall be in writing and shall state the grounds therefor. When the motion is based on facts that do not appear of record it shall be supported by affidavit ***.
***
*** The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 43 Trial counsel's certificate must strictly comply with Rule 604(d). *Curtis*, 2021 IL App (4th) 190658, ¶ 30. If the certificate does not strictly comply with the rule, the reviewing court must remand the case to provide the opportunity to file a new motion and for a new motion hearing. *People v. Lindsay*, 239 Ill. 2d 522, 528 (2011). Strict compliance means:

16

"[T]he certificate must be filed in the trial court, rather than on appeal ***. The filing should precede or be simultaneous with the hearing in the trial court. Such procedure will insure that the trial court, in considering a defendant's motion to withdraw his or her guilty plea or to reduce sentence, will be apprised that defense counsel has reviewed the proceedings with the defendant and prepared any necessary amendments to the motions." *People v. Shirley*, 181 Ill. 2d 359, 371 (1998).

If trial counsel filed a facially valid certificate, the reviewing court may consult the record to determine whether counsel fulfilled her obligations under the rule. *People v. Bridges*, 2017 IL App (2d) 150718, ¶ 8. When examining whether the record refutes counsel's certificate, reviewing courts are concerned that defendant received a full and fair hearing to present his claims of error to the trial court. *Tejada-Soto*, 2012 IL App (2d) 110188, ¶ 14 (a defendant is "entitled to a hearing that is *meaningful*, but only in the very limited sense that it is not a mere charade" (emphasis in original)).

¶ 44    Here, trial counsel strictly complied with Rule 604(d). Defendant asks this court to find counsel's Rule 604(d) certificate in violation of 604(d) by failing to present all of defendant's claims for relief, where she advised defendant to plead guilty, instead of filing a motion to dismiss the defective indictment, and filed a posttrial motion attacking only defendant's sentence. We cannot agree.

¶ 45    Defendant recognizes that trial counsel lacked the benefit of the supreme court's decision in *Kidd.* Defendant, however, cites to *People v. Rowell*, 229 Ill. 2d 82, 93 (2008) (supreme court determined that the charging instrument did not set forth all of the elements for the offense of theft of deception against defendant) and *People v. Terrell*, 132 Ill. 2d 178, 208-09 (1989) (supreme court explained that both aggravated criminal sexual assault and aggravated criminal sexual abuse required an intentional or knowing act by the accused), arguing that "[c]ounsel should have recognized these legal developments" and raised a *Kidd*-style argument, "even if there was not yet case law 'involving the precise defect,'" as provided in the case at issue. Although defendant

admits that the cited cases do not involve " 'the precise defect,' " he argues that trial counsel erred by failing to foresee the supreme court's decision in *Kidd*, given the supreme court provided the "building blocks for a *Kidd*-style argument" in *Rowell* and *Terrell*. We find defendant's argument flawed.

¶ 46    Defendant specifically admitted in his opening brief that the "only authority directly on point when he pled guilty was the not-yet-reversed appellate court's decision in *Kidd*, which was squarely against him." Moreover, at the time of defendant's guilty plea and the filing of his motion to reconsider sentence, additional Illinois case law specifically addressing predatory criminal sexual assault of a child demonstrated that a defendant's intent to be sexually aroused or gratified, as stated in section 11-1.40(a)(1), " 'can be inferred solely from the nature of the act.' " *People v. Kitch*, 2019 IL App (3d) 170522, ¶¶ 44-45 (quoting *People v. Burton*, 399 Ill. App. 3d 809, 813 (2010)). As such, in *Kitch*, although the charging instrument included the phrase "for the purpose of sexual gratification," the court determined that it could reasonably infer that the defendant touched the minor female's vagina for the purpose of sexual gratification or arousal, where the evidence showed that defendant touched the victim when other individuals in the house were sleeping, the victim told him to stop, and then, when the defendant failed to comply, the victim kicked him. *Id.* ¶ 45. As such, the evidence did not support that defendant's actions had an innocent purpose that could be accidental contact. *Id.* Thus, the court believed the fact finder could reasonably infer that the defendant touched the victim's vagina for sexual gratification or arousal. *Id.* As such, based on the above case law, we cannot conclude that trial counsel erred in failing to include this issue in the posttrial motion.

¶ 47 Based on the foregoing, we refuse to hold trial counsel to a standard requiring her to predict the supreme court's decision in *Kidd*. Thus, we cannot conclude that counsel's failure to raise a *Kidd*-style argument refutes the facially valid Rule 604(d) certificate.

¶ 48                        3. Ineffective Assistance of Counsel

¶ 49 Alternatively, defendant argues that trial counsel provided ineffective assistance of counsel by failing to file a motion to dismiss counts I through IV of the defective indictment. We cannot agree.

¶ 50 This court analyzes claims of ineffective assistance of counsel under the standard set forth in *Strickland*, 466 U.S. at 687. *People v. Evans*, 186 Ill. 2d 83, 93 (1999). To establish a claim of ineffective assistance under *Strickland*, a defendant must prove (1) that counsel's performance was deficient and (2) the counsel's deficient performance resulted in prejudice to the defendant. *Id.* A defendant satisfies the deficiency prong by demonstrating that counsel made errors that were so serious and counsel's performance was so deficient that counsel was not functioning as " 'counsel' " as guaranteed by the sixth amendment (U.S. Const., amend. VI). *Id.* Defendant must overcome the strong presumption that the challenged action or inaction was the product of sound trial strategy. *Id.* A defendant satisfies the prejudice prong by demonstrating that a reasonable probability exists that, but for counsel's deficient performance, the result of the proceedings would have been different. *Id.* Both prongs of the *Strickland* test must be satisfied before a defendant can prevail on a claim of ineffective assistance of counsel. *People v. Coleman*, 183 Ill. 2d 366, 397 (1998). Thus, if we find counsel's performance was not deficient, we need not reach the issue of prejudice. *Id.* at 397-98; *People v. Ramirez*, 2018 IL App (1st) 152125, ¶ 15.

¶ 51 For the reasons stated above in our previous analysis, we cannot conclude that trial counsel rendered ineffective assistance of counsel for failing to file a motion to dismiss. We simply cannot

19

deem trial counsel deficient for failing to predict the supreme court's decision in *Kidd* at the time defendant pled guilty and later when filing his motion to reconsider sentence. While trial counsel could have moved to dismiss the indictment or filed a motion to withdraw guilty plea, the failure to do so was not objectively unreasonable for the reasons stated above. To find otherwise would force this court to evaluate the reasonableness of counsel's actions, not from counsel's perspective at the time of the alleged error, but in hindsight. *Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). We decline to do so.

¶ 52    Accordingly, because defendant has failed to show that trial counsel was deficient for failing to predict the supreme court's decision in *Kidd* and file a motion to dismiss the information, not yet deemed defective by case law, we cannot conclude that trial counsel's performance amounted to ineffective assistance of counsel. Therefore, we need not consider the prejudice prong of defendant's claim. *Coleman*, 183 Ill. 2d at 397-98; *Ramirez*, 2018 IL App (1st) 152125, ¶ 15.

¶ 53                                B. Sentencing

¶ 54    Next, defendant argues that the trial court erred at sentencing by relying on uncorroborated, multi-level hearsay testimony, improper statements contained in the victim impact statements, that defendant's family suffered financial hardship following his arrest, and the State's unsupported speculation that defendant had been a "lifelong sexual predator." In response, the State contends that defendant's arguments are forfeited, where defendant failed to object at the sentencing hearing to the arguments raised on appeal.

¶ 55    Initially, we agree that defendant forfeited these issues. "[T]o preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising

20

the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Here, defendant failed to object to the issues at his sentencing hearing. Accordingly, defendant forfeited these issues. In his reply brief, however, defendant argues his forfeiture should be excused under the plain-error doctrine. To obtain relief under the plain-error doctrine, "defendant must first show that a clear or obvious error occurred." *Id.* at 545. "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.* The defendant has the burden of persuasion when arguing that plain error occurred. *Id.* If defendant fails to meet this burden, the court will honor the procedural defect. *Id.* Additionally, "[a]s the first step in the analysis, we must determine whether any error occurred at all." *People v. Williams*, 2018 IL App (4th) 150759, ¶ 16 (citing *People v. Eppinger*, 2013 IL 114121, ¶ 19). "If error did occur, we then consider whether either prong of the plain-error doctrine has been satisfied." *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 31 (citing *People v. Sargent*, 239 Ill. 2d 166, 189-90 (2010)).

¶ 56                                1. Detective Bross's Testimony

¶ 57    Defendant first argues that the trial court erred at sentencing by relying on Detective Bross's uncorroborated, multi-level hearsay. Specifically, he challenges Detective Bross's uncorroborated testimony that became the "source of many aggravating facts," including that (1) J.P. told Tewell that she gave in to defendant's advancements because he became " 'depressed and angry' " when she said no, which defendant agues was a factual error in Bross's testimony; (2) J.P. told Tewell that defendant showed her pornography, masturbated on her breasts, and stopped the abuse when Tracy became suspicious; (3) A.P. told Tewell that defendant manipulated her by "telling her that he needed to rub her breasts to see if they were 'healthy' "; (4) after a family fight defendant fondled A.P.'s breasts "as a demonstration" that he trusted her to keep a secret or

21

his actions " 'would ruin the family' "; and (5) A.P. broke down crying during her interview because she felt responsible for defendant abusing J.P. after A.P. denied defendant's advancements.

¶ 58    "[H]earsay testimony is not *per se* inadmissible at a sentencing hearing as unreliable or as denying a defendant's right to confront accusers." *People v. Foster*, 119 Ill. 2d 69, 98 (1987). An objection to such evidence goes to the weight of the evidence and not its admissibility. *Id.* Generally, double hearsay is admissible if "at least some parts of the double hearsay have been corroborated by other evidence." *Id.* Further, uncorroborated hearsay "is not inherently unreliable," particularly when an officer compiled the information during the official investigation and where the evidence was never directly challenged. *Id.* at 98-99.

¶ 59    A review of the record indicates no clear or obvious error occurred. The testimony of Detective Bross concerning the specific statements stated above by J.P. and A.P. lacked corroboration by Tewell and Officer Schmidt at the sentencing hearing. Nevertheless, that Detective Bross's testimony was allegedly double hearsay does not render it inherently unreliable. *Id.* Defendant argues that Detective Bross, himself, did not compile the information he testified about at defendant's sentencing hearing. Rather, defendant asserts that Detective "Bross's involvement in the interviews was no stronger than any other person who watched the videos." We cannot agree. Defendant is correct that Detective Bross, himself, did not interview the minor daughters or observe their interviews in real time. However, Detective Bross, as lead detective on defendant's case, watched the CAC interviews of A.P. and J.P. following defendant's arrest. Thus, Detective Bross, as lead detective, compiled the information during the official investigation of defendant's self-reported abuse of A.P. and J.P. In addition, the record reveals the evidence was never directly challenged, although defendant had the opportunity to cross-examine Detective

22

Bross at his sentencing hearing. As such, we simply cannot conclude that Detective Bross's testimony was unreliable. *Id.* at 96 (only requirement for admission of evidence at sentencing is that the evidence is reliable and relevant, as determined by the court within its sound discretion). Based on this, we also reject defendant's assertion that the State's use of leading questions when examining Detective Bross indicated that his testimony was unreliable. Again, we understand Detective Bross was not present for the CAC interviews; however, he testified about his recollection of the videos and described A.P.'s and J.P.'s descriptions of defendant's conduct towards them.

¶ 60    Accordingly, we cannot find the trial court erred by allowing Detective Bross to testify and relying on his statements concerning his recollection of J.P.'s and A.P.'s interviews. Even assuming *arguendo* that the admission of Detective Bross's testimony was error, the error was not, considering all the evidence against defendant, reversible.

¶ 61                    2. Additional Improper Factors in Aggravation

¶ 62    Next, defendant argues that the trial court relied on improper factors in aggravation, including (1) defendant's family's financial burden following his incarceration, (2) improper statements contained in the victim impact statements, and (3) the State's unsupported speculation that defendant was a lifelong sexual predator.

¶ 63    The trial court is granted great deference in sentencing a defendant; however, if the sentencing judge relies on an improper factor or makes comments indicating that he did not consider the statutory factors, a defendant is entitled to a new sentencing hearing. *People v. Walker*, 2012 IL App (1st) 083655, ¶ 30. To determine whether the trial court relied on proper aggravating and mitigating factors at sentencing, the reviewing court should consider the record as a whole, rather than focus on a few words or statements made by the trial court. *People v. Dowdling*, 388 Ill. App. 3d 936, 943 (2009). There is a strong presumption that the trial court based its sentencing

23

determination on proper factors and legal reasoning (*id.* at 942-43) that will not be overcome without explicit evidence from the record that the trial court did not consider mitigating factors or relied on improper aggravating factors (*People v. Payne*, 294 Ill. App. 3d 254, 260 (1998)).

¶ 64 Defendant argues that the trial court increased his sentence by considering Tracy's financial difficulties following defendant's arrest. The record does not support defendant's argument. "It is well established that the foreseeable consequences of a defendant's actions on a victim and his family are relevant considerations in sentencing." *People v. Reyna*, 289 Ill. App. 3d 835, 840 (1997) (citing *People v. Pavlovskis*, 229 Ill. App. 3d 776, 782 (1992)). As such, a trial court can consider a statement from a victim addressing the result of a defendant's conduct. See *id.* Here, the court noted at defendant's sentencing hearing that Tracy stated in her victim impact statement that she suffered financial difficulties following the loss of defendant's income. We cannot find the court erred in considering the family's financial troubles following the closing of the family business as a result of defendant's conduct, especially where the court specifically acknowledged as a mitigating factor that it considered that defendant owned a successful business prior to his arrest, allowing him to provide for his family. Additionally, we cannot conclude that the court's mention of the family's financial issues "essentially punished [defendant] for turning himself in," as defendant argues, provided that the court considered "significant mitigating factors," including that defendant turned himself in, took responsibility for his actions, cooperated with police, presented remorseful before the court, and acknowledged his wrongdoing. Thus, contrary to defendant's argument, the court viewed defendant's acceptance of his responsibility as a significant mitigating factor. Accordingly, we can find no error in the court's consideration of the financial hardship caused by defendant's conduct.

24

¶ 65    Next, defendant argues that the trial court erred by relying on improper statements contained in the victim impact statements, including (1) A.P.'s statement that defendant should go to prison for a " 'very very long time' " and (2) J.P.'s statement that defendant hit A.P. and " 'hurt' Tracy." Defendant also argues that the court erred by relying on the State's improper speculation that defendant had been a lifelong sexual predator when he admitted to touching his mother and cousin. We cannot agree.

¶ 66    Defendant is correct that the trial court read the victim impact statements. However, the record simply does not demonstrate that the court relied on the information stated above in fashioning defendant's sentence. Without explicit evidence from the record that the trial court considered improper aggravating factors, we must presume the court considered all relevant factors in determining a sentence. *Payne*, 294 Ill. App. 3d at 260. In addition, in response to the State's speculation that defendant could have sexually abused other victims, stating, "Who knows if there's other victims," the court stated on the record at the hearing on defendant's motion to reconsider sentence that it did not make "any comment about [defendant touching his cousin or mother] and certainly wouldn't really give that any weight in aggravation whatsoever." The record is clear that the court did not rely on the State's speculation. Accordingly, we can find no error existed.

¶ 67    We also note that the State raises first the effectiveness of counsel in response to defendant's opening brief concerning Detective Bross's testimony. The State argues that "[t]he lack of an objection or cross-examination is not indicative of ineffective assistance of counsel; rather, it is indicative that what was related in terms of what the taped interviews contained was accurate." In his reply brief, defendant then asserts for the first time that trial counsel was ineffective for failing to raise "the sentencing error raised herein." At first glance, it appears that

25

defendant's argument was in response to the State's argument; however, defendant cites to *Strickland* in his reply brief and then argues that counsel's failure to raise "this issue" provided no strategic benefit and prejudiced defendant as a result. Defendant then argues that he was prejudiced because a postsentencing motion would likely have been successful, as the record demonstrates that the court placed a "significant amount of weight on this improper factor when fashioning a sentence." Defendant then rests on the substantive argument raised in his opening brief concerning Bross's testimony and other improper factors. It is unclear what issue defendant is referring to when he states that trial counsel rendered ineffective assistance of counsel for failing to raise "this issue." As such, we decline to address this issue. See *New v. Pace Suburban Bus Service*, 398 Ill. App. 3d 371, 384 (2010) ("This court is not a repository where the burden of argument and research may be dumped[,] and we will not scour the record to develop argument for a party.").

¶ 68                                         C. Excessive Sentence

¶ 69     Finally, defendant argues his 30-year sentence was excessive. For support, defendant argues that the trial court failed to adequately consider defendant's rehabilitative potential, mental health issues, or "exceptional acceptance of responsibility." We disagree.

¶ 70     The trial court has broad discretionary powers in imposing a sentence, and the court's sentencing decision is entitled to great deference. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). The trial court is granted such deference because the trial court is generally in a better position than the reviewing court to determine the appropriate sentence. *Id.* The trial court "has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Id.* (citing *People v. Streit*, 142 Ill. 2d 13, 19 (1991); *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977)). Accordingly, this court "must not substitute its judgment for that of the trial court merely because it would have weighed these factors

26

differently." *Id.* (citing *Streit*, 142 Ill. 2d at 19). Where, as here, an imposed "sentence falls within the statutory limits, it will not be overturned on appeal absent an abuse of discretion." *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 16. "An abuse of discretion occurs only if a sentence greatly varies from the spirit and purpose of the law or where it is manifestly disproportionate to the nature of the offense." *Id.*

¶ 71    In applying these principles to the present case, we cannot say that the trial court abused its discretion by sentencing defendant to 30 years in prison—a sentence well within the sentencing range of 6 to 60 years. The record reveals that the court reviewed all evidence presented, all factors in aggravation and mitigation, the presentence investigation report, the seriousness of defendant's offense, and all arguments by the parties before imposing defendant's sentence. The court specifically addressed that mitigation evidence existed in his case, recognizing that defendant took responsibility for his actions, cooperated with police, presented remorseful before the court, and acknowledged his wrongdoing. Specifically, the court stated:

> "[Defendant] called the police. He admitted what he did to his wife, called the police, the police came, he was cooperative and made a statement, been remorseful, admitted everything essentially from the beginning, so I think that acknowledgement of wrongdoing, his acceptance of responsibility and his remorse are significant mitigating factors."

¶ 72    The trial court also considered that defendant lacked a serious criminal record and owned a successful business, which allowed him to provide for his family. In addition, the court considered as mitigation evidence four letters in support of defendant written by people who knew him. The court also acknowledged that defendant had mental health issues prior to defendant's treatment team determining, and the court finding, defendant fit to stand trial. The court stated at sentencing:

27

"It's clear that [defendant] was committing a crime for years against his daughters and I'm not trying to minimize what happened, but at some point[,] he was realizing what he was doing was wrong and he was becoming depressed and perhaps even suicidal which all led to the date when he felt that he had to tell everybody what was going on and he turned himself in."

Thus, the court recognized, not only his mental health issues during and after the crime, but that defendant acknowledged his wrongdoing and turned himself in to police.

¶ 73    Despite acknowledging that mitigation evidence existed, the court specifically noted the presence of "significant aggravation." Specifically, the court found it important to deter defendant and the community from "tak[ing] advantage of young girls, particularly relatives." In addition, the court found it important that defendant held a position of trust over his daughters, who both suffered mental health issues and attended therapy as a result of defendant's conduct. Moreover, the court found it significant that the abuse occurred over several years and the evidence demonstrated that defendant, in a position of trust and authority, guilted J.P. into engaging with him sexually. After considering the nature and circumstances of the offense, as well as defendant's criminal history, character, and rehabilitation potential, the court concluded that "a short sentence *** would deprecate the seriousness of [defendant's] conduct and be inconsistent with the ends of justice." Because the record indicates that the court properly considered all aggravating and mitigating factors relevant to the offense of predatory criminal sexual assault of a child, this court will not substitute its judgment for that of the circuit court. *Stacey*, 193 Ill. 2d at 209 (this court "must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently" (citing *Streit*, 142 Ill. 2d at 19)).

28

¶ 74    In sum, the trial court imposed a sentence well within the statutory limits after considering the statutory aggravating and mitigating factors. We cannot say that the sentence imposed by the court "greatly varies from the spirit and purpose of the law" or that "it is manifestly disproportionate to the nature of the offense." *Bunning*, 2018 IL App (5th) 150114, ¶ 16. Thus, we conclude that the court did not abuse its discretion by sentencing defendant to 30 years for the offense of predatory criminal sexual assault of a child.

¶ 75                            III. Conclusion

¶ 76    For the reasons stated, we affirm the judgment of the circuit court of Champaign County.


¶ 77    Affirmed.

29